THE STATE *ex rel.* WALKER, *Attorney General,* v. CORKINS *et al.*

In Banc, June 18, 1894.

1. **Statutory Construction:** EJUSDEM GENERIS, ETC. The object of the rule of statutory interpretation, that, where general words are preceded by particular ones, the former are to be construed as applying only to the persons or things particularly named, is to aid in ascertaining the legislative intent, and where such intent is clear the application of the rule can not be invoked.

2. ———: ———.   The foregoing rule only applies where the particular words are of the same nature or kind.

3. **Corporation:** VALIDITY OF ORGANIZATION: QUO WARRANTO.   Under Revised Statutes, section 2771, subdivision 11, which provides that corporations may be created "for any other purposes intended for pecuniary profit or gain, not otherwise especially provided for, and not inconsistent with the constitution and laws of this state," a corporation may be organized for the purpose of issuing bonds to be paid for by purchasers in monthly installments, and to be redeemed by the corporation as might be prescribed by it.

*Quo Warranto.*

DEMURRER TO INFORMATION SUSTAINED.

*R. F. Walker,* Attorney General, for the state.

(1)   *Quo warranto* is the proper remedy when persons have usurped or are unlawfully exercising the franchises of a corporation.   R. S. 1889, sec. 7390; *St. Louis v. Shields*, 67 Mo. 247; Cooley on Const. Lim.

[3 Ed.] sec. 254. (2) Section 7390, *supra*, confers express authority upon the attorney general to institute such proceedings in the supreme court, and it is not necessary to obtain the consent of the court before filing the information. *State ex rel. v. Rose*, 84 Mo. 198; *State ex rel. v. Vail*, 53 Mo. 97. (3) The information is properly directed against the persons usurping the franchises of a corporation, and not against the pretended corporation by name. *People v. Richardson*, 4 Cowan, 97, note on p. 109; *People ex rel. Attorney General v. Ins. Co.*, 15 Johns. 357; 40 Albany Law Journal, p. 10 and cases cited. (4) To institute proceedings against a corporation as such, where it is claimed that it has not been legally incorporated, would be to recognize its corporate existence; it is, therefore, only necessary, where the incorporation is void, to institute the proceedings against the person exercising the franchise. *State ex rel. v. Uridel*, 55 N. W. Rep. (Neb.) 1072; *Ins. Co. v. State*, 22 S. W. Rep. (Tex.) 1048. (5) A corporation being an artificial person, can not exist unless created by law; when called upon to show by what authority it exercises certain franchises as a corporation, it must show a valid legislative enactment therefor. *Mason v. Perkins*, 73 Mich. 303. (6) Under the statutes of this state corporations are divided into classes, the purposes of their existence defined and their powers clearly set forth. R. S. 1889, chap. 42. (7) The general provisions of said subdivision eleven of Revised Statutes, 1889, section 2771, must be confined to such classes as are enumerated in the foregoing portions of the section. It is an established principle of construction that where general words follow particular ones, the rule is to construe the former as applicable only to the persons or things particularly mentioned. *Ass'n v. Delano*, 108 Mo. 217; *State v. Bryant*, 90 Mo. 534; *Grumley v. Webb*, 44 Mo. 444;

*St. Louis v. Laughlin*, 49 Mo. 559; *St. Joseph v. Porter*, 29 Mo. App. 605; *Knox City v. Thompson*, 19 Mo. App. 523. (8) At the last session of the general assembly an act was passed requiring bond investment companies to deposit the sum of $100,000 with the state treasurer, in cash or securities, for the protection of investors in the bonds, certificates or debentures of such companies. Laws Mo., 1893, p. 121. This is not such a recognition of the corporate existence of the bond companies as to authorize them to engage in business as such. While it is true that a proper legislative recognition of a company as a corporation would cure certain defects in its organization, such legislative recognition must be of an association which could have been incorporated. *Dobson v. Simonton*, 86 N. C. 492; *Evenson v. Ellingson*, 67 Wis. 634. (9) Legislative recognition can only be of a *de facto* corporation. *Society v. Cleveland*, 43 Ohio St. 481; Taylor on Priv. Corp. [2 Ed.] 143, and note 5; Beach on Priv. Corp., sec. 13, p. 21.

*Jackson & Montgomery* for respondents.

(1) The use of the words "for any other purpose, intended for pecuniary profit or gain" (R. S. 1889, sec. 2771) would seem to indicate the intention of the legislature to include all the varied business enterprises which might be entered into in a great commonwealth. The meaning and proper construction of the word "other" is that it is employed in this relation, to obviate the insertion of a long list of names or things. Instead of inserting them *eo nomine*, they are embraced in the expression, "any other purpose," etc. To express the full meaning, the sentence would read "for any purpose different from those which have been specified, intended for pecuniary profit or gain." The

rule of *"ejusdem generis"* has no application here.   It
is a rule of construction that, where general words
follow particular ones, the former shall be restricted as
applicable only to persons or things *ejusdem generis*.
But this is not an inflexible rule. It is only adopted as a
rule of construction to ascertain the intention of the
legislative body.   If it is clearly not the intention of
legislative body to limit the general words to mean and
include those of a like character as the ones particularly
enumerated, it will not be so applied.   17 Am. and
Eng. Encyclopedia of Law, title "others," page 278,
*et seq.; State v. Williams*, 35 Mo. App. 546; *Eubanks v.
State*, 5 Mo. 450; 1 Kent's Com., 462; *State v. Shock*, 68
Mo. 560; *Boynton v. Coyle*, 4 Mo. 599; *Foster v. Blount*,
18 Ala. 687.   Again, if the particular words exhaust
a whole genus or include widely variant and different
persons or things, the rule of construction does not
apply. *Ellis v. Murray*, 28 Miss. 129; *Boynton v.
Coyle*, 4 Mo. 599; *Eubanks v. State*, 5 Mo. 450; *Foster
v. Blount*, 18 Ala. 687; *State v. Williams*, 35 Mo. App.
546; *Brown v. Corwin*, 42 N. W. Rep. (Minn.) 481;
*Bank v. Investment Co.*, 12 S. W. Rep. (Tex.) 103.   (2)
But even if there was any doubt about the right of the
defendant to organize under this article, such doubt is
fully removed by the subsequent action of the legisla-
ture.   Its right, and the powers conferred upon it are
fully recognized and ratified by the act of April 21,
1893.   Laws, 1893, page 121.   "When the existence of
a corporation has been recognized by acts of the legis-
lature, all inquiry into the original creation of the
corporation is precluded."   This principal is recognized
and supported in *Railroad v. Railroad*, 2 Mo. App. 73;
*Mead v. Railroad*, 45 Conn. 199; *Poor School v. Co.*,
9 Ohio, 203; *Bow v. Allentown*, 34 N. H. 351; *State
v. Road Co.*, 44 N. J. Law, 496; *Koch v. Railroad*, 23
Atl. Rep. (Md.) 463; *McAnley v. Railroad*, 83 Ill. 352;

*Snell v. Chicago*, 133 Ill. 427. This principle applies as well to direct proceedings by *quo warranto* as in the case at bar. *People v. Perrin*, 56 Cal. 346; *Proprietors of Enfield*, 5 N. H. 280; *Commonwealth v. Proprietors*, 10 Mass. 155; *Commonwealth v. Heirs of Andræ*, 3 Pick. 224; *People v. Manhattan Co.*, 9 Wend. 351; *Matter of Elevated Road*, 17 N. Y. 338; *Canal Co. v. Vallette*, 21 How. U. S. 414; *People v. Farmham*, 35 Ill. 566; *People v. Jameson*, 16 Ill. 257; Cook on Stockholders, sec. 636, and authorities cited in note 2. (3) This compliance on the part of the defendants with the act and the deposit of the $100,000 securities, now estops the state to question its right to do business. *U. S. v. Wagon Road*, 54 Fed. Rep. 810, and authorties cited; 2 Herman on Estoppel, page 1406, sec. 1256. (4) It is suggested that it may be urged that the business of the defendant is neither "manufacturing or business" as the words are used in the statute. Business, we take it, in its usual meaning, embraces about everything about which a person can be employed, and loaning money and saving money and all such contracts are included. A wider, broader term could hardly be used. *Trewart v. Decker*, 51 Wis. 47; *Parker Mills v. Commissioner*, 23 N. Y. 242; *Goddard v. Chaffee*, 2 Allen, 395; *Winter v. Railroad*, 2 Dillon, 487.

MACFARLANE, J.—This is an original proceeding in the nature of a *quo warranto* against respondents as the officers who assume to manage the affairs of what they claim to be a corporation organized under the laws of the state of Missouri. The petition or information is as follows:

"Now comes R. F. Walker, attorney general for the state of Missouri and states that the above named defendants on the first day of November, 1892, deposited articles of agreement with the secretary

of state for the purpose of securing a certificate of incorporation for a company to be named and styled the Pettis County Investment Company, city of Sedalia, Missouri. The said certificate was sought to be obtained under the provisions of subdivision 11, section 2771, article 8, chapter 42, Revised Statutes 1889; that said article 8 provides for the incorporation of manufacturing and business companies; that said company so sought to be incorporated by defendants was not sought for a manufacturing or business purpose, but for the purpose of issuing bonds to be paid for by purchasers thereof in monthly installments and to be redeemed by said corporation so sought to be formed in such order and at such times as might be prescribed by it; that on the said first day of November, 1892, articles of incorporation were issued by said secretary of state to said defendants'for the incorporation of said company under the name and style of the Pettis County Investment Company, city of Sedalia, Missouri, as aforesaid; that the issue of said articles for the incorporation of said company for the purpose stated was without any authority of law; that from and since the first of day of November, 1892, the above named defendants have claimed and held themselves out to the public as a corporation under the name and style of the Pettis County Investment Company, city of Sedalia, Missouri; and as such have claimed and exercised the right and privilege of issuing bonds and selling and disposing of the same in the state of Missouri; that such issue and sale of bonds under the name, style and pretended authority aforesaid is without any legal warrant, franchises, charter or grant.

"The attorney general for the plaintiff further states that he has no knowledge or belief nor means of information sufficient to form a belief as to whether or not other parties to plaintiff unknown are under the

name of the Pettis County Investment Company, city of Sedalia, Missouri, usurping the franchise of a corporation by issuing bonds as aforesaid; plaintiff therefore asks that any and all persons who are, under the pretended authority of said company, issuing bonds as aforesaid be prohibited by a proper writ from this court from so doing.

"Wherefore, the attorney general, who prosecutes in this behalf for the state of Missouri, prays the consideration of the court here in the premises and that proceedings of law may be issued against said defendants that they, as well as parties to plaintiff unknown, may be ousted of their usurped authority and that the pretended corporation, to wit, the Pettis County Investment Company, city of Sedalia, Missouri, may be declared a nullity."

To this information a general demurrer was interposed by respondents.

Argument was heard and briefs are furnished on the demurrer, and the only question for our consideration is whether the information states facts which show that the articles of incorporation are without authority of law and that respondents are usurping the franchises of a corporation.

As will be seen there is no charge in the information that respondents, or the corporation they claim to manage, are doing an unlawful business, and for the purposes of the question, as presented by the demurrer, we must assume that they are doing a business authorized by law. The question involves alone the legality of the incorporation.

The constitution of the state declares that "no corporation * * * shall be created by special laws; nor shall any existing charter be extended, changed or amended by special laws, except those for charitable, penal or reformatory purposes, which are under the

patronage and control of the state." Const. of Mo. art. 12, sec. 2. Corporations, then, since the adoption of the constitution, must be created under the general laws of the state, and can have no valid existence unless authorized by general law.

The general statute authorizing the organization of corporations for manufacturing and business purposes, and under which respondents claim an effective incorporation, reads as follows:

"Sec. 2771. *May incorporate, for what purposes.*— Corporations may be created under this article for any of the following purposes: First, to carry on any kind of mining, mechanical, chemical, manufacturing, smelting, printing, coal oil or petroleum business; second, to encourage and promote agriculture and the improvement of stock, and for these purposes may establish fair grounds; third, to construct toll bridges; fourth, to erect hotels, halls, market houses, warehouses, exchange and other buildings, and for the purpose of purchasing, owning, and renting buildings already erected; fifth, to build wharves, docks, grain elevators, levees, and to construct canals and embankments for the reclaiming of lands; sixth, to convey and transport persons and freights on land or water by any mode of conveyance whatever; seventh, to construct and operate horse railroads; eighth, to purchase and use fire engines, hose, hooks and ladders, and all other apparatus necessary or useful to prevent and extinguish fires; ninth, to supply any town, city, district, neighborhood or village with gas or water; tenth, to establish steam or other ferries; eleventh, for any other purpose intended for pecuniary profit or gain not otherwise especially provided for, and not inconsistent with the constitution and laws of this state."

Respondents claim that subdivision eleven of said section gives ample authority to incorporate for the

purpose of issuing bonds to be paid for by purchasers thereof in monthly installments and to be redeemed in such order, and at such time, as might be prescribed, and of selling and disposing of such bonds in the state of Missouri.  On the other hand, relator claims that under a proper construction of said section no authority for incorporation for such purposes is given.

The settled policy of the state to encourage the combination of capital, in lawful business enterprises, under corporate management, is apparent from the number of laws upon its statute books authorizing the creation and existence of corporations.  It will be found that chapter 42 of the Revised Statutes of 1889 provides for the organization of corporations. The chapter is divided into articles which designate the purposes for which corporations may be organized and provides the details of organization, prescribes their powers and duties, and imposes limitations and restrictions.  The relation the business of some corporations bears to the public has made it necessary to impose special duties and restrictions upon them.  Of these may be named railroad companies, insurance companies, and banks.  To defining the powers and rights and the duties and obligations of each of these, one or more articles have been devoted.  So, special articles provide for the organization of certain corporations which are not, strictly speaking, intended for pecuniary profit or gain.  Of these may be named benevolent, religious and educational associations; training schools for minors, and police force and fire department relief associations.

It is plain that this division of the chapter into articles is intended for convenience and to make such special provisions as the particular nature of the business may require.  For the ordinary business enterprises no such division would have been necessary.

Article eight was designed to cover all these. The article is entitled "manufacturing and business companies." The title to this article is broad enough to authorize incorporation for all lawful business pursuits, for pecuniary gain or profit, which may engage capital and enterprise, and which is not specially provided for by other articles.

But there are certain manufacturing and business pursuits which may not appear readily to fall under the general designation of "manufacturing and business" as given in the title. So the legislature has thought it proper and desirable, in order to prevent any doubt as to the character of the business authorized under this article to be conducted under corporate powers, to specifically name them. Hence section 2771 of said article declares for what manufacturing and business purposes an incorporation is allowed. It is clear that this subdivision is intended to enlarge rather than restrict the scope of the title to this article. We find the first subdivision to include, with other business, that of mining, smelting, printing, coal oil and petroleum business. The second, in the promotion of agriculture, authorizes the astablishment of fair grounds. The third authorizes the building of toll bridges. The fourth authorizes the building and management of hotels, halls and warehouses. The other subdivisions, down to the last, give authority to incorporate for other specific business purposes which it was thought proper to provide for specially. The last or eleventh subdivision, under which respondents claim to act, authorizes incorporation "for any other purpose intended for pecuniary profit or gain *not otherwise specially provided for,* and not inconsistent with the constitution and laws of this state."

It is not insisted by relator that the purpose of the incorporation of the Pettis County Investment Com-

pany, as shown on the face of the certificate, is inconsistent with the constitution and laws of the state, or that it is not for pecuniary profit or gain, but it is said that such purpose was not included within the intent and meaning of the article, and the certificate of incorporation is therefore without legal warrant, franchise or grant.

The primary object to be attained in the interpretation of statutes is to ascertain and give effect to the intention of the legislature; and this is to be determined upon a consideration of the entire act and the objects and purposes intended to be accomplished. The evident purpose of this article was to authorize in corporation for business purposes. The other articles of the chapter, and the first ten subdivisions of article eight, include only purposes which are not common, but are unusual and extraordinary, or such as require special powers and duties. Unless effect, therefore, be given to the eleventh subdivision all the common and ordinary business of life, such as merchandising, farming, and dealing in live stock, would be wholly excluded, and the principal purpose of the article would be defeated. It is inconceivable that the legislature should deliberately make a separate and independent subdivision of the section under which the principal business of the country would fall, without intending to give it any effect at all, or intending, at most, to give it a very limited and restricted meaning. We think this subdivision was intended to have some meaning, and that effect should be given to the language employed.

Relator insists upon applying to this subdivision of the section the rules of interpretation which require that when general words follow particular and specific words, the former must be confined to things of the same kind as those specially used.

It may be said, in the first place, that rules for the interpretation of statutes are only intended to aid in ascertaining the legislative intent, "and not for the purpose of controlling the intention or of confining the operation of a statute within narrower limits than was intended by the lawmaker." Sutherland on Statutory Const., sec. 279. If the intention is clearly expressed, and the language used is without ambiguity, all technical rules of interpretation should be rejected. We, therefore, see no grounds for the application of technical rules here.

But assuming that the scope and meaning of the words, "for any other purpose," in the eleventh subdivision is doubtful, it is evident that the doubt is created by an application of the rule invoked. The question, then, is, do these words, in the connection, and in the manner used, fall within the rule *ejusdem generis*. It is said, as a reason for the rule, that "it affords a mere suggestion to the judicial mind that where it clearly appears that the lawmaker was thinking of a particular class of persons or objects, his words of more general description may not have been intended to embrace any other than those within the class. The suggestion is one of common sense." Sutherland on Statutory Const., sec. 279. Unless the general words, then, are used in close and intimate connection with the particular words, there could be no such suggestion. The subdivisions of this section are separate and independent of each other, and each of them must have required and received separate consideration by the legislature. We can not say that the attention of the lawmaker was confined to a particular class. He had in his mind, not only each subdivision, and each particular class of subjects enumerated in this article, but of those contained in other articles. He must, also, have had in mind, subdivision eleven and the general

class of business he intended to include. We do not think the general words are so connected with the particular ones, as would make the rule applicable.

Again, reading the entire subdivision, it clearly appears that the particular classes of business previously enumerated were thought of and carefully excluded from those intended to be provided for under subdivision eleven. It expressly declares the intention to authorize incorporation for purposes "not otherwise especially provided for." It thus appears that the lawmaker had in mind, not only the particular classes of business already enumerated, but other business pursuits not belonging to those classes, and that he intended to include them.

Further, this rule applies only where the specific words are all of the same nature. "Where they are of different *genera*, the meaning of the general word remains unaffected by its connection with them." Endlich on the Interpretation of Statutes, sec. 409.

An examination of the preceding subdivisions of the section will show that each class of business enumerated, is entirely independent of the other, and of a wholly different nature, and most of them completely exhaust the class mentioned, and consequently leave no similar classes to which the general words in the last subdivision can apply. The general words, then, must be taken in their ordinary meaning, without regard to their connection with the preceding particular words.

We think the corporation under the management of respondents legally incorporated under subdivision eleven of article eight, and is authorized, under its certificate of incorporation, to engage in and pursue the business therein specified, provided such business be transacted in a lawful manner, and for lawful purposes.

The demurrer is sustained. BRACE, J., does not sit. SHERWOOD and BURGESS, JJ., dissent. The other judges concur.