## THE STATE ex rel. KINLOCH TELEPHONE COMPANY v. CORNELIUS ROACH, Secretary of State.

### In Banc, December 21, 1916.

1. **CORPORATIONS: Duration.** If the duration or life of a corporation is not expressed in its articles, the time allotted to it by law is twenty years.

2. ———:———: **Extension: Sec. 2991, R. S. 1909: Applicable to All Corporations.** In order to give full effect to the whole of Sec. 2991, R. S. 1909, both its spirit and letter, it is necessary to construe the words "such corporation" found in the first proviso as being applicable to all the different classes of corporations expressly mentioned in the section—to those organized prior to 1875 or after that time, and to those organized under either special or general statutes.

3. ———: ———: ———: **Organization Tax.** A corporation whose life was limited to twenty years, because no time for which it was to endure was mentioned in its articles, must, if it wishes to extend its life for the thirty years mentioned in Sec. 2991, R. S. 1909, pay an organization tax, just as if it were an entirely new corporation.

4. **STATUTORY CONSTRUCTION: Interpretation by Executive Officers.** A uniform interpretation of a statute by the executive officers whose duty it is to enforce it and a uniform conduct under it without question for a long period of time, while not binding upon the court, are entitled to some weight, where there is doubt as to the meaning of the statute.

### Mandamus.

WRIT DENIED.

*Wm. R. Orthwein* for relator.

(1) Relator was entitled to file its statement certifying that it was incorporated under the general laws of the State in 1896 and that its articles of association had been amended by its stockholders by adding a new section stating that "the life of said corporation shall extend for a period of fifty years from the date of its creation," and the Secretary of State should have duly certified to the same without the payment of any tax. Sec. 2977, 3322, 3338, 3354, R. S. 1909. (2) If Sec. 2991, R. S. 1909, applies to corporations such as relator incorporated

under the general laws of the State since the passage of
the act, nevertheless the relator did not have to pay the
tax provided therein, because said section provides for
such payment only from corporations incorporated under
laws prior to 1875. State ex inf. v. Lindell Ry. Company,
151 Mo. 169-174. (3) If the tax provision of section 2991
is meant to apply to such corporations as relator, then
said section is unconstitutional and void in so far as it
would affect corporations such as relator because it would
deprive relator of its property without due process of
law and fail to give relator the equal protection of the
laws in violation of the provisions of the Constitution
of the United States and of Missouri, and for the further
reason that it would violate the terms of the Constitution
of Missouri in levying a tax which is not uniform upon
the same class of subjects. Sec. 1, art. 4, Amendment
to U. S. Constitution; Sec. 30, art. 2, Constitution of
Missouri; Sec. 3, art. 10, Constitution of Missouri; State
ex rel. v. St. Louis, 216 Mo. 47; 8 Cyc. 1059, 1063-1071;
Duncan v. Missouri, 152 U. S. 377; Field v. Barber, 194
U. S. 618. (4) The payment required is a tax within
the meaning of the provisions of the Constitution relating
to the uniformity of taxes. State v. Roach, 181 S. W.
90; State ex rel. v. Lesuer, 145 Mo. 322; Cement Co. v.
Gas Co., 255 Mo. 151. (5) In construing statutes, such
laws as stand *in pari materia* should be considered and
construed together, and reading the constitutional pro-
visions with the various statutes relating to this subject
shows that the purpose is, that every corporation incor-
porated under, or later coming under the general laws,
must pay the tax but once. Macke v. Burd, 131 Mo. 682;
Blyston Spencer v. Railroad, 152 Mo. App. 118.

*John T. Barker*, Attorney-General, and *W. T. Ruther-
ford*, Assistant Attorney-General, for respondent.

The sole question is the correct construction of Sec.
2991, R. S. 1909, and especially the latter clause thereof.
The sections of the statute relating to the matter at issue
are sections 2976, 2977, 2978, section 2990 as amended by
Laws 1913, p. 165, and Sec. 2991, R. S. 1909. There is

a dearth of authorities on the question, but after diligent
search we have found the following cases, which may be
applicable: Tile Company v. Bruner, 148 Ky. 358; Lamb
& Sons v. Dobson, 117 Iowa, 124; Lead Co. v. Dickinson,
79 N. J. L. 596; Gregg v. Mining Co., 164 Mo. 629; 2
Lewis' Sutherland on Stat. Const., sec. 474; Ross v. Rail-
road, 111 Mo. 18; State ex rel. v. Railroad, 135 Mo. 618.
The Legislature may lawfully require the payment of this
tax on each extension of corporate existence. 1 Clark &
Marshall on Corporations, sec. 287 (b), and cases cited
under note 60. Section 2991, supra, was enacted in 1885
(Laws 1885, p. 81), ten years after the adoption of our
present Constitution.

REVELLE, J.—On December 5, 1896, the relator was
incorporated for the purpose of engaging in the general
telephone and telegraph business in the State of Mis-
souri. Its original capital was $1,500,000, which from
time to time has been increased until it is now $5,000,000.
Neither its original nor amended articles of incorpora-
tion contained any statement of the number of years it
was intended its corporate existence should continue. Its
demise under these articles being near at hand, the board
of directors and stockholders on June 22nd last duly
adopted an amendment to its charter, extending its ex-
istence for a further period of thirty years. After the
necessary preliminary steps had been taken, the proposed
amendment was duly presented to the respondent and
as Secretary of State, he was requested to file the same
and issue his official certificate thereof. This he refused
to do because relator refused to pay an organization
tax of $3000, and respondent seeks by this proceeding to
compel such action.

It is conceded by both parties that since the duration
or life of the corporation was not expressed in the arti-
cles, the time allotted it by law was twenty years, the
statute so providing. Relator justifies its refusal to pay
the tax demanded, upon the ground that it is not seeking
to *extend* but merely *amend* its charter, and that the stat-
ute authorizing amendments requires the payment of no

fee or tax, except in the case where the amendment consists of an increase in the capital stock. The section relied upon is 2977, Revised Statutes 1909, and provides merely that amendments, upon being made and filed with the Secretary of State, shall become a part of the articles, but that no amendment can be made which gives any greater rights than though the subject of the amendment had been incorporated in the original articles, and further that, upon an increase of capital stock, the additional amount provided by law for such increase shall be paid.

The respondent denies that the extension of corporate existence is a legitimate matter or subject of amendment within the purview of the above section, and contends further that even if it be such, relator is none the less subject to the payment of the tax prescribed in section 2991, Revised Statutes 1909, which section alone, he asserts, provides authority for an extension of existence. if, as relator contends, section 2991, supra, does not apply to the subject-matter, and if, as respondent asserts, section 2977, supra, is not applicable, there is no statutory power given to corporations in this State to prolong their life. This power, however, seems not to be seriously questioned, and for a long number of years has been generally recognized and exercised, and for the purpose of this case we shall treat it as existent. Even if, as relator contends, it has power under the section authorizing *amendments* to make the proposed extension, it does not follow that it is not liable for the tax demanded, unless it appears that the section prescribing such tax is inapplicable to cases of its character. This section is as follows:

"Sec. 2991. The powers enumerated in the preceding section shall vest in every corporation that shall hereafter be created or organized, and any corporation, including those heretofore organized and now in existence under any general or special law of this State, may accept the provisions of the general laws of this State relating to corporations, by filing with the Secretary of State a certificate of such acceptance, signed by its president and secretary, duly authorized by its board of

directors and approved by a vote of three-fourths of its stockholders, at any meeting duly and legally called for, that purpose—notice of such meeting first having been given in manner and form as provided in sections 2981 and 2982 of this article, or by three-fourths of the stockholders, in writing; and upon the filing of such certificate the time of the existence of said corporation shall be extended for such period as was originally permissible to it, or as may be stated in its certificate of acceptance. But nothing herein contained shall extend or continue to any corporation organized or existing under a special law or charter, any special privilege, immunity, franchises or exemptions not possessed by corporations organized under the general laws of this State; and any corporation organized or existing under special law or charter shall, by accepting or availing itself of the provisions of this section, be deemed and held to thereby waive and surrender any and all such special privileges, immunities, franchises and exemptions, and it shall be subject to all the duties and obligations of corporations under the general law of this State; *Provided,* further, that the duration of such corporation shall not be continued as aforesaid, until such corporation shall pay into the State Treasury fifty dollars for the first fifty thousand or less of the capital stock of the corporation, and a further sum of five dollars for every additional ten thousand dollars of its capital stock, as provided by law: *Provided,* that nothing in this section contained shall be construed to authorize the renewal, continuance or extension of the charter of any company engaged in the manufacture or sale of illuminating gas. [R. S. 1899, sec. 972.]''

If that part of this section which fixes the tax is construed as applicable to corporations organized since its passage and under the general laws as well as to those organized prior thereto and under special laws, there is still no repugnance nor inconsistency between it and the one authorizing amendments, in which event the two, being *in pari materia,* will be construed as if their provisions were embraced in the same section. The decision,

therefore, of this case, depends upon the construction to be given the latter section, and whether it applies to corporations organized subsequent to its passage and under the general laws, such as was the relator.

The provision in question, while enacted more than thirty years ago, has never been judicially reviewed. It has, however, been uniformly interpreted by the executive officers whose duty it has been to enforce it, and their construction has been acted upon without question for a long period of time. While this is in no sense binding upon the courts, it is entitled to some weight, where, as here, there is some doubt as to the meaning. [State ex rel. v. Railroad, 135 Mo. 618; Ross v. Railroad, 111 Mo. 18.]

Prior to the adoption of the Constitution in 1865, corporations were organized only by special act of the Legislature, and this led to "ill-advised, incongruous and dissimilar charters." [State ex inf. v. Lindell Ry. Co., 151 Mo. l. c. 170.]

It was then written into the Constitution that corporations, except municipal, should hereafter be formed, if at all, only in pursuance of general laws, and in 1866 the General Assembly accordingly provided general laws therefor. The Constitution of 1875 extended the inhibition against the creation of corporations by special acts to municipal corporations. The manifest intention of those framing and adopting these constitutional provisions was to place the franchises and privileges of corporations on a basis of equality and uniformity and give to all for future operations a fair field with no favor. Legislative provisions calculated to bring specially formed corporations under the general laws were immediately enacted, so that in 1885, when the present section was enacted, we were thoroughly committed to the idea and policy of equal rights and privileges in corporations.

This was evidently in the mind of the Legislature when it inserted in the section under revew the broad and sweeping language:

"Every corporation that shall *hereafter* be created or organized, and *any* corporation, *including those* hereto-

fore organized and now in existence under *general* or *special* law of this State, may accept the provisions . . ."

If the phrase found in the proviso that "the duration of *such* corporation shall not be continued as aforesaid," applies only to corporations organized prior to 1875, as relator contends, the segregation thus accomplished results in discrimination and does violence to the policy of equality. A corporation having spent the life which the law gave it can assert no inherent rights to further existence. Natural, not artificial, resuscitation is its relief and this comes only through the law and as it decrees. Having provided equality in all other respects it is not strange that the law would enact the same conditions of all when it comes to the matter of renewing the life.

In order to construe the section as relator urges, it would be necessary to rewrite the same and strike therefrom all those provisions referring to corporations organized under the general laws and subsequent to its passage. The section specifically refers to corporations organized after its passage and under the general laws, and provides that when certain conditions are complied with, the time of the existence of such corporations can be extended. It seems to us that in order to give full effect to the whole section, both its letter and spirit, it is necessary to construe the terms "such corporation," found in the proviso, as being applicable to all the different classes of corporations expressly mentioned in the section.

On a similar, though slightly different, state of facts, the Supreme Court of New Jersey held as we do (National Lead Co. v. Dickinson, 70 N. J. L. 596) that in order to extend the corporate existence the tax must be paid and this is in accordance with the interpretation heretofore uniformly placed upon the section by the public and executive officers.

Respondent's demurrer to relator's petition is sustained, and the preliminary writ issued herein is quashed.

*Graves, C. J.,* and *Walker, Faris* and *Blair, JJ.,* concur; *Woodson* and *Bond, JJ.,* dissent.