**STATE ex Inf. John M. DALTON, Attorney General, ex rel. Richard E. HOLEKAMP et al., Appellants,**

v.

**HOLEKAMP LUMBER CO., a Corp., et al., Respondents.**

No. 48171.

Supreme Court of Missouri,

En Banc.

Nov. 14, 1960.

Rehearing Denied Dec. 12, 1960.

Donald E. Fahey, St. Louis, for relators-appellants.

Leonard E. Martin, Eugene H. Buder, St. Louis, for respondents.

HYDE, Chief Justice.

Quo warranto to oust Holekamp Lumber Company (hereinafter called Holekamp) and individual respondents, majority stockholders, from carrying on the functions of a corporation of this state. Motions to dismiss were sustained and relators have appealed.

The motions to dismiss raised questions of proper parties and as to whether the information stated facts upon which relief could be granted. Because of the view we take we consider only the latter. The decisive question on this issue is whether the duration of a corporation, incorporated in 1908, could be extended by a majority vote only (authorized by our present Corporation Code, Chapter 351, RSMo, V.A.M.S.) or whether action by three-fourths vote to accept subsequent laws (as provided in Sec. 972, RS 1899) was required. Because of the general importance of this question we transferred this cause from the St. Louis Court of Appeals. For further details of pleadings, reference is made to the opinion of the Court of Appeals, State ex inf. Dalton v. Holekamp Lumber Co., Mo.App., 331 S.W.2d 171, and reference is also made thereto for a full statement of the contentions of relators and the full text of statutes considered.

The challenged extension of the period of duration of Holekamp was made by amendment of its articles under authority of Sec. 351.085 (statutory references are to RSMo and V.A.M.S. unless otherwise stated) for which Sec. 351.090 required only a majority vote. These sections are part of "The General and Business Corporation Law of Missouri," Chapter 351, adopted in 1943 (Laws 1943, p. 410), which is made applicable by Sec. 351.690(4) "to all other corporations, existing under prior general laws of this state" excepting certain kinds specifically mentioned in preceding subsections, not material here. Relators' basic contention is that extension of Holekamp's duration could only be made under the procedure provided by Sec. 972, RS 1899, which was in force when Holekamp was incorporated and which they claim required a three-fourths vote for this purpose. They contend the statutes enacted in 1943 could not apply because they claim the Constitution of Missouri in force at that time (Constitution of 1875) reserved no general power to amend any corporate charter, nor was there any such statutory reservation, relying on Trustees of Dartmouth College v. Woodward, 4 Wheat. 518, 4 L.Ed. 629. However, we do not agree with relators' claim that this State had reserved no such power under its 1875 Constitution as to corporations authorized to be incorporated under its general laws; and for the reasons hereinafter stated hold valid the extension made under authority of Secs. 351.085 and 351.090.

Prior to our 1865 Constitution, corporations were usually created by special act of the Legislature, although there were prior general laws authorizing certain kinds of corporations to be incorporated by signing, acknowledging and filing articles. RS 1855, Chapters 34, 35, 36, 37, 38, 39. Our 1865 Constitution, Art. 8, Sec. 4, provided: "Corporations may be formed under general laws, but shall not be created by special acts, except for municipal purposes. All general laws and special acts passed pursuant to this section may be altered, amended, or repealed." Pursuant to that constitutional provision, a comprehensive general corporation act was passed by the Legislature in 1866 (Laws 1865–66, pp. 20–70). This act consisted of one chapter on general powers and liabilities and eight other chapters, each dealing with different kinds of corporations, and many of its provisions remained in effect until the adoption of our 1943 Corporation Act.

It should be noted that the 1865 Constitution did not prohibit the amendment, by special act, of special charters previously granted to corporations. State ex rel. Circuit Attorney of the Tenth Judicial Circuit v. Cape Girardeau and S.L.R. Co., 48 Mo. 468; State ex rel. Ranney v. Thileneus, 48 Mo. 479; St. Joseph & I. R. Co. v. Shambaugh, 106 Mo. 557, 569, 17 S.W. 581. However, this power was taken away by the 1875 Constitution. Moreover, Sec. 4, Art. 8, of the 1865 Constitution stated the matter affirmatively, namely: "Corporations may be formed under general laws" and "all general laws and special acts * * * may be altered, amended, and repealed," while the 1875 Constitution stated the whole matter in negative form. Sec. 2, Art. 12, thereof, was as follows: "No corporation, after the adoption of this Constitution, shall be created by special laws; nor shall any existing charter be extended, changed or amended by special laws, except those for charitable, penal or reformatory purposes, which are under the patronage and control of the State." Certainly this negatively stated provision of the 1875 Constitution did not mean that no corporations could be created by general laws. (See State ex rel. Walker v. Corkins, 123 Mo. 56, 63, 27 S.W. 363, 364, stating this meant that corporations "must be created under the general laws of the state, and can have no valid existence unless authorized by general law.") Our conclusion is that both provisions meant not only that corporations may be formed under general laws but also that the 1875 provision meant general laws authorizing corporations to be formed may be repealed, changed or amended by general laws. (The

question of such meaning by implication was suggested by Judge Pearcy in his work on Missouri Corporation Law, Sec. 175.) This is true because general laws concerning corporate powers are a part of all corporate charters.

■ This construction appears more clearly when we consider Art. 4 of the 1875 Constitution. Sec. 1 of Art. 4 provided: "The legislative power, subject to the limitations herein contained, shall be vested in a Senate and House of Representatives, to be styled 'The General Assembly of the State of Missouri.'" It is a well-settled principle of constitutional law that our state constitution "is not a grant but a restriction or limitation on the legislative powers; therefore the General Assembly has all legislative powers not denied it by the constitution." State ex rel. Jones v. Atterbury, Mo.Sup., 300 S.W.2d 806, 810. One of the limitations, provided by Sec. 53, Art. 4, was: "The General Assembly shall not pass any local or special law * * * [25.] Creating corporations, or amending, renewing, extending or explaining the charter thereof." Sec. 53 further provided that "where a general law can be made applicable, no local or special law shall be enacted"; and made the applicability of a general law "a judicial question." We, therefore, hold that the 1875 Constitution did contain a sufficient reservation to permit our Legislature to adopt general laws authorizing amendments to articles of incorporation of existing corporations, organized under general laws, to be made by a majority vote of their shareholders. Of course, since we had never before construed these provisions of the 1875 Constitution to determine the question of such reserved power, the St. Louis Court of Appeals could not have decided the case on this ground because the limitation of its jurisdiction by Sec. 3, Art. 5, Const., V.A.M.S., prevented it from making any construction of the Constitution.

Nevertheless, even with such a reservation of power, the authority of the Legislature to amend corporate charters or to authorize stockholders to do so is not absolute. Determination of the extent of this authority "requires consideration of three constitutional doctrines: police power, due process and obligation of contracts." Extent of the Legislature's Reserve Power to Change Common Law Attributes of Corporations, Hayes, 13 Vanderbilt Law Review 261. It is said: "The charter of a corporation having a capital stock is a contract between three parties, and forms the basis of three distinct contracts. The charter is a contract between the state and the corporation; second, it is a contract between the corporation and the stockholders; third, it is a contract between the stockholders and the state." Cook on Corporations, Sec. 492. The third is also described as a contract of the stockholders inter sese. It is pointed out (13 Vanderbilt Law Review 275) that three principal approaches have been made by the courts in deciding what changes may be made with legislative sanction. 1."One is that under its reserved power the legislature may not make or authorize a majority to make any changes that will affect the contract between the shareholders themselves (unless perhaps as to matters where public interest overrides) but may change or authorize changes only in the contract between the state and the corporation * * * 2.A second approach is that the legislature may make or permit a majority of the stockholders to make any changes except those which will deprive a stockholder of some vested right. * * * 3.The third approach is that the reserved power of the legislature is part of the tripartite contract between state, corporation and shareholders, and therefore the state or a majority of the shareholders when authorized by the state may make any change as to corporate attributes without impairing any obligation of any aspect of that contract." See also, Constitutional Limitations Upon Legislative Power to Alter Incidents of the Shareholder's Status in Private Corporations, Schmidt, 21 St. Louis Law Review 12. Sec.

351.695 of our Corporation Code enacts the vested rights principle and of course the purpose of this is to satisfy the requirements of due process. See Ballentine on Corporations, Chapter 18; see also Dissenting Stockholders and Amendments to Corporate Charters, Dodd, 75 Univ. of Penn. Law Review 723. The right to exercise the police power of the State was declared by Sec. 5, Art. 12 of the 1875 Constitution.

■■■■■ Relators point out that Holekamp's articles stated: "Article Sixth: The corporation shall continue for a period of fifty years." They say this was an agreement that the corporate life would cease March 10, 1958, and gave them a vested right to have their equity in the corporation distributed to them at that time, subject only to action by three-fourths of the stockholders under Sec. 972, RS 1899. Relators would have a better argument, if as suggested in Smith v. Eastwood Wire Mfg. Co., 58 N.J.Eq. 331, 43 A. 567, 568, the stockholders of Holekamp had, in its articles, excluded the power of continuing its corporate existence beyond a fixed period. However, they merely stated its existence as the longest period permitted by the applicable statute (Sec. 1312, RS 1899) at the time of its incorporation. As stated in the Smith case (43 A. loc. cit. 568): "The period of corporate existence is a matter which prima facie concerns the state only, and the limitation to a definite period is an exercise of control in the interest of the public." See also Drew v. Beckwith, Quinn & Co., 57 Wyo. 140, 114 P.2d 98, 115 P.2d 651; Keetch v. Cordner, 90 Utah 423, 62 P.2d 273, 108 A.L.R. 52, and Annotation 59–77; 13 Am.Jur. 228, Sec. 85; 18 C.J.S. Corporations § 79, page 470; 8 Fletcher, Cyclopedia of the Law of Corporations 553–568, Secs. 4092–4109. We agree with the statement in the Drew case (114 P.2d loc. cit. 107) that merely extending the existence of a corporation for another period of the same duration as stated in its original articles does not make a change "so fundamental that it should be declared in violation of the constitution relating to

impairment of the contract of the stockholders." See also Garzo v. Maid of the Mist Steamboat Co., 303 N.Y. 516, 104 N.E. 2d 882. Certainly authorizing an extension of corporate existence does not effect a substantial impairment of the purpose for which the corporation was organized; it does not drag these stockholders into a totally different enterprise from the one in which they intended to invest nor confiscate any of their property. We therefore hold that the stockholders of Holekamp had no vested right to have its existence terminated and its assets distributed in 1958.

■■■■■ Sec. 972, RS 1899, on which relators rely, had a double purpose. One purpose was to bring existing corporations, organized under special acts, under the general laws concerning corporations, by their voluntary action, including their surrender of all special privileges, immunities, franchises and exemptions, which perhaps was the reason for requiring a three-fourths vote. The other purpose was to collect fees for the privilege of extending corporate existence and this was undoubtedly the reason corporations organized under general laws were included in its terms. This section was the result of an amendment in 1885 (Laws 1885, p. 80) to the previous section vesting all corporations with certain powers enumerated in a preceding section, both of which sections originally were enacted when all corporations were created by special act of the Legislature. See Chapt. 34, Art. 1, Secs. 1 and 2, RS 1845. In 1881 (Laws 1881, p. 72) a new statute was enacted, which became Sec. 958, RS 1899, authorizing amendments to articles of corporations organized under the laws of this state with the limitation that such authority "shall not be so construed as to give any corporation whose articles are amended as in this article contemplated, any greater rights than though the subject of the amendments had been incorporated into the original articles of association." In State ex rel. Kinloch Telephone Co. v. Roach, 269 Mo. 437, 190 S.W. 862, 863, without deciding what kind of amendments this section authorized, or

by what proportion of stockholders, we held it in pari materia with Sec. 972 so that the two sections should "be construed as if their provisions were embraced in the same section." By this construction, it was held that corporations organized under general laws had to pay the tax required by Sec. 972 to make effective a charter amendment extending its existence for a further period of thirty years. Likewise, in State ex rel. and to Use of George B. Peck Co. v. Brown, 340 Mo. 1189, 105 S.W.2d 909, we held that our 1931 act (Laws 1931, p. 297), authorizing corporate existence to be extended by amendment "to any stated period or perpetual," must be construed with Sec. 4556, RS 1929 (which was Sec. 972, RS 1899) ; and we ruled that the tax required by that section must be paid before extension authorized by the 1931 act could become effective.

Sec. 972 (then Sec. 5031, RS 1939) was repealed by the 1943 Corporation Act (Laws 1943, p. 410, Sec. A) and as hereinabove stated the 1943 Corporation Act made all existing corporations organized under general law subject to its provisions. Hicks v. Forsyth Electric & Water Co., 330 Mo. 839, 50 S.W.2d 1045, 1047, cited by relators, held a statute prospective in operation, stating that such construction was required "if the act changes or alters in any respect the rights arising from the implied contract between a corporation and its stockholders, or between the stockholders inter sese." However, the statute in that case did not specifically state that it applied to existing corporations, as did the 1943 Corporation Act, and furthermore in making no distinction between fundamental and less important changes which are only auxiliary, incidental, or supplemental, the court's statement was too broad. As to fundamental changes see 13 Fletcher-Corporations 89, Sec. 5776; see also Tanner v. Lindell Railway Co., 180 Mo. 1, 79 S.W. 155. However, the Hicks case is not controlling in the situation presented herein since we have concluded that there was reserved power in the 1875 Constitution to permit the Legislature to provide, in general laws, authorization for amendments to corporate articles of existing corporations by shareholders (an issue not considered in the Hicks case) and have decided that minority stockholders did not have a vested right to require termination of corporate existence merely because the articles stated a definite term. We, therefore, hold that the court properly sustained the motion to dismiss for failure to state facts upon which relief could be granted.

The judgment is affirmed.

All concur.