FILED 81
Honorable George W. Lehr State Auditor State Capitol Building Jefferson City, Missouri 65101
Dear Mr. Lehr:
The following opinion is in response to your request as follows:
 "Am I authorized to include the following public bodies within the scope of an audit of the Department of Transportation:
 1. Missouri-St. Louis Metropolitan Airport Authority;
 2. Bi-State Development Agency of the Missouri-Illinois Metropolitan District;
 3. Kansas City Area Transportation Authority of the Kansas City Area Transportation District;
 4. The four two-state bridge commissions contained in Section 14.5 of the Omnibus State Reorganization Act of 1974 (V.A.M.S. 1975 Appendix, pp. 76, et seq.)."
The State Auditor is authorized to audit the Department of Transportation (hereinafter MoDOT) pursuant to Section 29.200, RSMo, which states in relevant part:
 "The state auditor shall postaudit the accounts of all state agencies. . . ."
The Omnibus State Reorganization Act of 1974, V.A.M.S. 1976, Appendix B, pp. 10, et seq. (hereinafter the Reorganization Act), creates a Department of Transportation, Section 14, p. 31. (See also: Article IV, Section 32(a); Section 33, Missouri Constitution.) The following provisions of Section 14 pertains to this opinion request:
 "2. The Missouri-St. Louis Metropolitan Airport Authority, chapter 305, RSMo, the Bi-State Development Agency of the Missouri-Illinois Metropolitan District, as authorized by section 70.370, the Kansas City Area Transportation Authority District, as authorized by chapter 238, RSMo, are assigned to the department of transportation.
* * *
 "5. The Missouri-Illinois bridge commission, section 234.500, RSMo; the Missouri-Illinois bridge commission, section 234.580, RSMo; the Tennessee-Missouri bridge commission, section 234.360, RSMo and the Missouri-Illinois bridge commission (Canton), section 234.430, RSMo are transferred by type III
transfer to the department of transportation, and members of the bridge commissions shall be appointed by the transportation commission." (Emphasis added)
Section 1.7(1) of the Reorganization Act defines a "type III" transfer and "specific-type" transfer as follows:
 "(c) Under this act a type III transfer is the transfer of a department, division, agency, board, commission, unit or program to the new department with only such supervision by the head of the department for budgeting and reporting as provided under subdivisions (4) and (5) of subsection 6, of this section and any other supervision specifically provided in this act or later acts. Such supervisions shall not extend to substantive matters relating to policies, regulative functions or appeals from decisions of the department, division, agency, board, or commission unless otherwise provided by this act or later acts. The method of appointment under type III transfer will remain unchanged unless specifically altered by this act or later acts.
 "(d) Under this act a specific type transfer is any transfer other than type I, type II and type III transfers."
The Missouri-St. Louis Metropolitan Airport Authority (hereinafter the Airport Authority), the Bi-State Development Agency (hereinafter Bi-State), and the Kansas City Area Transportation Authority (hereinafter KCATA) are "assigned" to the Department of Transportation. This office has expressed its opinion that the language "assigned," as utilized in the Act, constitutes a "specific-type" transfer. Furthermore, a "specific-type" transfer does not provide what the effect will be except to allow the conclusion that the agency is "placed" within the department. Opinion No. 53, Garrett, March 18, 1975. That opinion concerned the Office of Adjutant General. The Office of Adjutant General is expressly defined as part of the "military division of the executive department of state government" under the direct control of the Governor. Article IV, Section 6; Section 41.040, RSMo.
Bi-State and KCATA were created by interstate compacts entered into with Illinois and Kansas, respectively, and approved by Congress. Therefore, the issue is whether the same conclusion reached, concerning the Adjutant General, can be drawn for said entities which are "assigned" to MoDOT.
This office has recently rendered its opinion that Bi-State and KCATA are not independent "state agencies" authorized to be audited by the State Auditor pursuant to Section 29.200, RSMo. Opinion No. 142, Lehr, July 24, 1975 (copy enclosed). The fundamental question here is whether the General Assembly has authority to "place" Bi-State and KCATA within a department of state government for any purported administrative regulation at the state level, including an audit by the State Auditor.
In Opinion No. 142, 1975, we expressed doubt concerning the authority of the state of Missouri to unilaterally subject Bi-State and KCATA to an audit. Relying on the case of Bush Terminal Co. v. Cityof New York, 273 N.Y.S. 331 (1934), we stated that such interpretation of Section 29.200, RSMo, would undermine the rights and privileges conferred upon the states of Illinois and Kansas by the respective compacts. It is our view that Section 14.2 of the Reorganization Act, as it relates to Bi-State and KCATA, is invalid for the same reason because it purports to unilaterally subject Bi-State and KCATA to some undefined regulation as a part of an executive department of state government.
Further support for this view in found in Delaware River andBay Authority v. Carello, 222 A.2d 794 (Ch. Del. 1966); Port of NewYork Authority v. J. E. Linde Paper Co., 127 N.Y.S.2d 155 (1953); and Henderson v. Delaware River Joint Toll Bridge Commission,66 A.2d 843 (Penn. 1949). In Carello, supra, the Court of Chancery of Delaware held that a Delaware act establishing collective bargaining rights for public employees could not be applied to employees of an agency created by an interstate compact. The court acknowledged that a state surrenders a portion of its sovereignty when it enters into an interstate compact and, therefore, it looked to the compact for authority relative to employees and held that neither state could unilaterally alter the powers contained in the compact.[1]
In J. E. Linde Paper Co., supra, the Municipal Court of the City of New York, held that the New York Port Authority was exempt from the New York Emergency Rent Law. The court rested its judgment, in part, upon the fact that application of the act would constitute a unilateral imposition of a burden on the authority's powers by regulation of one of the states in derogation of the compact.
In Henderson, supra, the Pennsylvania Supreme Court held that a statute, which waived any requirement for a bi-state bridge commission to obtain street occupancy permission from a municipality, was valid. The court reasoned, at page 849, that the legislation was:
 ". . . in no way in derogation of anything contained in the original and supplemental compacts to which both New Jersey and Congress have assented. Actually, the statute is in aid of the Commonwealth's expeditious fulfillment of its undertakings in the compacts. . . ."
The court recognized that individual states can enact legislation which furthers the purposes of a compact but are without authority to diminish or dilute any authority contained in a particular compact. The court stated at pages 849-850:
 "Of necessity, Pennsylvania acted unilaterally in the matter, but she was, nonetheless, well within her rights in further empowering the Commission so as to enable it, with respect to matters within this State's jurisdiction, to perform adequately and completely the purposes of the Commission's creation. It is within the competency of a State, which is a party to a compact with another State, to legislate in respect of matters covered by the compact so long as such legislative action is in approbation and not in reprobation of the compact. See Olin v. Kitzmiller, 259 U.S. 260, 263, 42 S.Ct. 510, 66 L.Ed. 930, affirming the same case as reported in 9 Cir., 268 F. 348; also P. J. McGowan Sons, Inc., v. Van Winkle, U.S.D.C. Or., 21 F.2d 76, affirmed by the Supreme Court in 277 U.S. 574, 48 S.Ct. 435, 72 L.Ed. 995, in a memorandum opinion `* * * on the authority of Olin v. Kitzmiller, 259 U.S. 260, 263, 42 S.Ct. 510, 66 L.Ed. 930.'"
See also: Rao v. Port of New York Authority, 122 F. Supp. 595 (E.D. N Y 1954) aff'd 222 F.2d 362 (2nd Cir. 1955).
Thus, it is our view that the state of Missouri lacks authority to unilaterally subject Bi-State or KCATA to regulation which would be in derogation of authority granted to the commissioners of the respective entities by each compact. Therefore, we conclude that any interpretation of Section 14.2 of the Act which would subject Bi-State or KCATA to regulation, as part of an executive department of state government, is invalid. From the foregoing, it is our conclusion that Bi-State and KCATA should not be included within the scope of an audit of the Department of Transportation, conducted pursuant to Section 29.200, RSMo.
The Missouri-St. Louis Metropolitan Airport Authority (Sections305.500 to 305.585, RSMo Supp. 1973), presents a different issue. It was created by the General Assembly and is defined as a "body corporate and a political subdivision of the state." Section305.510.1. As previously cited, section 14.2 of the Reorganization Act "assigns" the Airport Authority to MoDOT. The Airport Authority receives regular appropriations from general revenue. (See: Section 4.780, House Bill No. 4, 78th General Assembly, First Regular Session.) thus, the issue concerning the Airport Authority is distinguishable from the Bi-State/KCATA issue because the Airport Authority was solely created by the General Assembly.
The Airport Authority is established as an independent entity with the power to sue and be sued, Section 305.510; to contract generally, Section 305.550(1); to employ all necessary personnel, Section305.550(2); and to exercise full powers relating to the acquisition and operation of airports, Sections 305.520 and 305.525, including the power of condemnation, Section 305.520.2, and the authority to issue revenue bonds, Section 305.530. Therefore, the rare, and perhaps unique, situation exists wherein the General Assembly has initially established an independent political subdivision and body corporate, and has subsequently "placed" it within an executive department of state government for some undefined regulatory control. The question is whether the General Assembly is authorized to do the above.
The state constitution, unlike the federal constitution, is not a grant of power but, as to legislative power, is only a limitation; except for the restrictions imposed by the state constitution, power of the state legislature is unlimited and practically absolute. ArticleII, Section 1, Missouri Constitution; State ex inf. Danforthex rel. Farmers' Electric Cooperative, Inc. v. State EnvironmentalImprovement Authority, 518 S.W.2d 68 (Mo. Banc 1975); Household FinanceCorporation v. Shaffner, 203 S.W.2d 734 (Mo.Banc 1947); Stateex inf. Dalton ex rel. Holekamp v. Holekamp Lumber Co., 340 S.W.2d 678
(Mo.Banc 1960) app. dismissed 366 U.S. 715 reh. den. 368 U.S. 870. Any doubt concerning the power of the legislature must be resolved in favor of the General Assembly and against nullifying or restricting its power of operation. Brown v. Morris, 290 S.W.2d 160
(Mo.Banc 1956). Transportation within the state is subject to reasonable regulation by the state, in the exercise of its police powers and such power may be delegated to a subdivision to facilitate administration of the laws of the state. State ex rel. AudrainCounty v. City of Mexico, 197 S.W.2d 301 (Mo. 1946).
We are not aware of any restriction of legislative authority in the Constitution which would prohibit the legislature from subjecting a previously-created political subdivision of the state to regulation by an executive department of state government. With this in mind, and considering the above-stated principles, it is our view that the General Assembly was authorized to "place" the Airport Authority within MoDOT. As such, it follows that the Airport Authority should be considered within the scope of an audit of MoDOT, conducted pursuant to Section 29.200, RSMo.
The remaining question concerns the four bridge commissions transferred by "type III" to MoDOT. They are:
(1) Missouri-Tennessee, Sections 234.360-234.420, RSMo
 (2) Missouri-Illinois (Canton), Sections 234.430-234.490, RSMo
 (3) Missouri-Illinois (Ste. Genevieve), Sections 234.500-234.570, RSMo
 (4) Missouri-Illinois-Jefferson-Monroe, Sections 234.580-234.650, RSMo
All four commissions are created by interstate compact with requisite approval by Congress.
The status of the bridge commissions is identical to that of KCATA and Bi-State, for purposes of answering the question involved here. Thus, it is our opinion that the General Assembly is without authority to unilaterally subject these commissions to regulation, as part of an executive department of state government. Any such attempt would be in derogation of the compacts entered into by the respective states and as approved by the United States Congress.
CONCLUSION
It is the opinion of this office that:
(1) The Bi-State Development Agency of the Missouri-Illinois Metropolitan District and the Kansas City Area Transportation Authority of the Kansas City Area Transportation District should not be included within the scope of an audit of the Missouri Department of Transportation, conducted pursuant to Section 29.200, RSMo.
(2) The Missouri-St. Louis Metropolitan Airport Authority should be included within the scope of an audit of the Missouri Department of Transportation, conducted pursuant to Section 29.200, RSMo.
(3) The Missouri-Tennessee Bridge Commission, the Missouri-Illinois (Canton) Bridge Commission, the Missouri-Illinois (Ste. Genevieve) Bridge Commission, and the Missouri-Illinois-Jefferson-Monroe Bridge Commission should not be included within the scope of an audit of the Missouri Department of Transportation, conducted pursuant to Section 29.200, RSMo.
The foregoing opinion, which I hereby approve, was prepared by my assistant, Andrew Rothschild.
Yours very truly,
 JOHN C. DANFORTH Attorney General
Enclosure: Op. No. 142 7-24-75, Lehr
[1] Both compacts in question here contain a similar provision. Section 70.370; Article III(8); Section 238.010, RSMo; Article III (11).