THE PACIFIC RAILROAD, Plaintiff in Error, *vs.* RENSHAW, Defendant in Error.

1. The charter granted to the Pacific railroad in 1849, was subject to the general law concerning corporations of 1845, which gave the legislature power to alter, suspend or repeal all charters thereafter granted. A person who subscribed for stock under the original charter will not be discharged from his liability to pay for it, by a subsequent legislative alteration of the charter without his consent, the general object of the corporation remaining unchanged.

*Qu.* Whether the legislative control would extend to an entire change in the character and objects of the corporation?

*Error to St. Louis Court of Common Pleas.*

This was an action brought by the Pacific railroad, a corporation, to recover calls upon stock subscribed by Renshaw, and which he refused to pay. There was a judgment for the defendant, and the plaintiff appealed. The defence relied upon appears in the opinion of the court.

*Glover & Richardson* and *T. Polk*, for plaintiff in error. It is a principle well grounded, both in law and reason, that partnerships or private joint stock companies, acting under corporate powers, have no authority to change their fundamental articles, or to appropriate funds that have been procured by them for a specific purpose to a wholly different purpose, so as to be binding on the members thereof, without their consent. Gow on Partnership, 576. *Ware* v. *Grand Junction Water Co.* 2 Russ. & Mylne, 461. *Union Lock and Canal Co.* v. *Towne,* 1 N. H. Rep. 44. *Hartford and N. H. Railroad* v. *Crosswell,* 5 Hill, 385. 3 Eng. Law and Eq. Rep. 144. 4 J. C. R. 573. Cooper's Eq. Rep. 77. 1 Railway Cases, 153. This assent may be express or implied. Express, when the change is allowed to be made, either by a provision inserted in the original constitution of the company and in anticipation thereof, or by a positive ratification after the fact. Implied, when the alteration is such as to do no violence to the obvious intent and purpose originally contemplated. In this case, there was both express and implied assent. 1. The alteration is such as to do no violence to the object defined in the original charter. The great object in view was, to construct a railroad to the western boundary of the state, with a view to its extension to the Pacific ocean. Jefferson city was not a terminus of the road, but an intermediate point. The alteration of an intermediate point is not material, and is fully within the power of the legislature. *Barret* v. *Sangamon and Alton Railroad Co.* 13 Ill. Rep. 505. 9 Ohio, 136. 2 Penn. Rep. 470. *Gray* v. *Monongahela Navigation Co.* 2 Watts & Serg. 156. 2 Pen. & Watts, 466. 8 Mees. & Wels. 803. 6 Bingham's New Cases, 135. 5 Hill, 385. *Clemens* v. *Central Plank Road Co.* 16 Mo. Rep. It is true, there are decisions which go far enough to show that, in this case, the alteration is such as to entirely change the original work, and thus absolve the shareholders who have not assented to it from their liability. 8 Mass. 268. 10 ib. 384. But it

is believed these cases do not set forth the true rule of law. 2. The seventh section of the act concerning corporations (R. C. 1845) declares that every corporation hereafter granted shall be subject to alteration, suspension and repeal, in the discretion of the legislature. Corporations purely of a public nature have always been subject to the absolute power of the legislature. 9 Cranch, 52. 4 Wheat. 518. 3 Story on the Cons. 258. 1 Tucker's Comm. 161. The clause in the general law of 1845 was part of the original charter of this corporation, and was intended to place it on the footing of a public corporation, in reference to the power to suspend, alter or repeal. It is to be taken as entering into the contract of the defendant, when he subscribed for his stock, and he cannot complain that the legislature has exercised the control over the charter, to which it was subject when he became a member of the corporation. 4 Wheat. 708. 23 Maine, 318. 1 Paige's Ch. Rep. 108. Angel & Ames on Corporations, 732. 2 Kent's Comm. 272, 306–7.

*Geyer & Dayton* and *A. H. Buckner*, for defendant in error. The changes in the charter, by the amendments of 1851, so materially alter the contract between the subscribers and the company, as to release the former from their subscriptions. Grant on Corporations, 19. Collyer on Partnership, 641. *Livingston* v. *Lynch*, 4 J. C. R. 573. 5 Hill, 383. 8 Mass. 268. 10 ib. 384. 1 N. H. Rep. 49. 2 Penn. Rep. 184. Angel & Ames on Corporations, 483, (3d ed.) *Davis* v. *Hawkins*, 3 Maule & S. 488. *Stevens* v. *Rutland & B. R. Co.*, Law Register for January, 1853. The reservation in section seven, article one, of the act concerning corporations; (R. C. 1845) of the power to alter, &c., in the discretion of the legislature, is a mere reservation of political power. Under it, the legislature may utterly destroy the value of a franchise granted to a corporation, either by modifying it or taking it away entirely, but they cannot compel the corporators to use the franchise as modified. If a majority of the corporators

consent to the change, it would still be at the option of any one not consenting to abandon the contract altogether. No one could be compelled to remain in the corporation after the terms of his connection were materially changed. The reservation of the power to amend a charter accomplishes nothing more than might have been done before, with the assent of the corporation. That is, a change may be made without the consent of the corporation, and with the same effect precisely as if the assent had been given. Therefore, as between the stockholders and the corporation, the effect is the same as if the power had not been reserved, but the amendment assented to by the corporation.

GAMBLE, Judge, delivered the opinion of the court.

1. The railroad company was incorporated by an act approved 12th March, 1849, with power to construct a railroad from the city of St. Louis to the city of Jefferson, and thence to some point in the western line of Van Buren county, in this state, with a view that the same may be hereafter continued westwardly to the Pacific ocean, and with authority to extend branch railroads to any point in any of the counties in which said road may be located. The charter thus granted was subject to the provisions of the general act concerning corporations, (R. C. 230,) the seventh section of which provides : "The charter of every corporation that shall hereafter be granted by the legislature, shall be subject to alteration, suspension and repeal, in the discretion of the legislature." The defendant, Renshaw, became a subscriber for fifteen shares of the stock of the company under this charter. At a subsequent session of the general assembly, two acts were passed which, the defendant alleges, materially affected the powers of the corporation, as conferred by the original charter, and discharged him from his subscription for stock. The first is the act of 22d February, 1851, which authorizes the company to accept bonds

which the state may issue for $2,000,000, and to dispose of the bonds and employ the money in the construction of the road ; the road to be mortgaged for the principal and interest of the bonds. The second is the act of 1st March, 1851, purporting to be an amendment of the charter in many important particulars, among which is the grant of authority to construct the road from St. Louis to any point on the western line of the state, on any route the company may select. Other alterations are made in the powers of the company, which are not necessary to be noticed here, because the questions in the case arise upon those here stated, as fully as upon any or all of the others. The act purporting to amend the charter was to be in force, from the time of its acceptance by a majority in number and interest of the stockholders. It has been accepted.

It seems to be supposed by some persons, that acts of incorporation are granted by the legislature as mere gratuities or favors to individuals, and that the state has no other interest in the matter, than to provide against any injury to the state or its citizens by the improper conduct of the bodies thus created. This is altogether a mistake. Corporations are created upon considerations of benefit to the public. Enterprizes which cannot be successfully conducted by individual capital and energy, may be successful when the wealth and energy of a great number of individuals shall be combined, and the state may be deeply interested in promoting such success. No person can fail to see that general prosperity results from the increased facilities of communication and transportation furnished by roads and canals, and from the promotion of commerce and manufactures. Nor can any person be ignorant that the incorporation of companies has had a vast influence in advancing these great interests of society.

When an act of incorporation has been passed, the legislature cannot change any of its terms without the consent of the company, unless the power to make such change is reserved in

the act of incorporation itself, or is contained, as in the present case, in a general law authorizing such alteration in all charters not expressly exempt from the operation of such general act. The powers, then, which the legislature could exercise, in altering, suspending or repealing the charter of the Pacific Railroad Company, under the general law relating to corporations, were just as extensive as if the same words were inserted in the charter itself, and could be exercised upon the same considerations of public necessity or advantage. If, in the judgment of the assembly, the public interest required any alteration in the charter, either by increasing or diminishing, or in any manner varying the corporate powers, such alteration could be made. Or it could be made by the abandonment of the control, which, by the general law, had been reserved to the legislature, and so the charter would be altered in the material feature of being no more subject to future alterations by the assembly. Into such a corporation, subject to such powers of legislative control, the defendant entered when he subscribed for stock in the company, and he cannot now be allowed to complain that the power has been exercised, nor is he, by the exercise of such power, discharged from his obligation to pay for the stock.

This provision in our general law concerning corporations, has been introduced into our statutes from the laws of other states, and may be found in the statutes of Maine, from which we borrow it. In the case of the *Meadow Dam Co.* v. *Gray*, 30 Maine Rep. 548, the company sued one of its stockholders to recover an assessment upon his stock. There seems to have been no pleadings in the case, and the different points in dispute between the parties were presented to the court upon an agreed statement. One of the questions was, whether the defendant, who had subscribed for stock under a charter granted in 1846, was discharged from his liability to pay for it by the fact that, by an additional act passed in 1848, the liability of the stockholders had been increased. Chief Justice Shepley,

in delivering the opinion of the court, says : " The act of incorporation was accepted and the subscription was made, with a provision in the act, that it should be subject to all the duties and liabilities imposed upon corporations by the twenty-sixth chapter of the revised statutes. The twenty-third section of that chapter provides, that all acts of incorporation thereafter granted, shall at all times be liable to be amended, altered or repealed at the pleasure of the legislature. The defendant cannot, therefore, correctly allege that his liability has been increased without his consent. He consented to such action of the legislature by becoming a member of the corporation." The fact that the charter of the Meadow Dam Co. contained a clause that expressly subjected it to the operation of the general law, does not make the case any stronger than if such clause was not inserted, for the general law subjects all acts of incorporation to the power of the legislature, unless there is an exemption in the charter itself.

2. We are not called upon to say whether, under the power reserved to the legislature, there may be an entire revolution in the character and objects of the corporation, such as changing the railroad company into one which shall be entirely a manufacturing company. But in the present case, all the changes that have been made are such as an enlightened policy may well have suggested, as beneficial to the state at large, as well as to the company, and are such as preserve to the company its identity and the character it had when first created.

The judgment will be reversed, and the cause remanded for further proceedings, the other judges concurring.