## McKEMIE *et al.* *v.* EADY-BAKER GROCERY COMPANY.

The charter of a commercial corporation granted by a superior court on May 5, 1897, for the term of twenty years, with the privilege of renewal at the expiration of that term, may be renewed upon the application of the corporation, authorized by a majority vote of the stockholders.

No. 102. MAY 1, 1917.

Petition for injunction. Before Judge Freeman. Troup superior court. December 30, 1916.

The Eady-Baker Grocery Company was incorporated by order of the superior court on May 5, 1897. The application for charter prayed that the applicants and their successors be incorporated "for a term of twenty years, with the privilege of renewal at the expiration of said term." The order of incorporation declared that the applicants "and their successors be and they are hereby incorporated for a term of twenty years as a private corporation, with the privilege of renewal at the expiration of said twenty years, under the name and style of the Eady-Baker Grocery Company." A short time before the expiration of the charter the corporation adopted a resolution, by a vote of the holders of a ma-

48

jority of the stock of the corporation, authorizing and empowering the board of directors, together with the president of the corporation, to have the charter renewed for a period of twenty years. At the meeting of the stockholders at which this resolution was adopted W. S. McKemie and George A. Speer, minority stockholders, were present and voted against the resolution. Agreeably to the resolution, the corporation filed an application for renewal, and the application for such renewal was being published as required by the statute, when McKemie and Speer filed a petition against the corporation and its officers, to enjoin them from proceeding further with the publication of the application to renew the charter of the Eady-Baker Grocery Company, and praying for an administration of the assets of the corporation by means of a receivership upon the expiration of its present corporate term, on the ground that they had not assented to the corporate action authorizing a renewal of the charter. The court refused the injunction, and the plaintiffs excepted.

*Bryan, Jordan & Middlebrooks* and *W. R. Tichenor*, for plaintiffs. *B. H. Hill* and *Hall & Jones*, for defendant.

HILL, J. (After stating the foregoing facts.) The constitution of this State (art. 3, sec. 7, par. 18) declares that the General Assembly shall have no power to grant corporate powers and privileges to private companies, but that it shall prescribe by law the manner in which such powers shall be exercised by the courts. The General Assembly has enacted that the superior courts of this State shall have power to create private corporations in the following manner: The persons desiring a charter shall file, in the office of the clerk of the superior court of the county in which they desire to transact business, a petition or declaration specifying the object of their association, the particular business they propose to carry on, together with the corporate name, and the amount of capital to be employed by them actually paid in, and their place of doing business, and the time, not exceeding twenty years, for which they desire to be incorporated. This petition is required to be published once a week for four weeks; and upon the hearing of the petition, if the court shall be satisfied that the application is legitimately within the purview and intention of the act, it shall pass an order declaring the application granted, and the "petitioners and their successors incorporated for and during a term not

exceeding twenty years, with the privilege of renewal at the expiration of that time, according to the provisions above set forth." Civil Code of 1910, § 2823. Corporations granted under this general statute are expressly given the power to apply for a renewal of the charter on the expiration of twenty years; and the question presented by this record is whether the authority to extend the charter by renewal for a like term of twenty years must have the unanimous consent of the stockholders, or may such renewal be granted on the application of the corporation by virtue of a resolution concurred in by stockholders who own a majority of the stock, without the consent of a minority stockholder. In the present case the original application for charter prayed for the right of renewal, and the order granting the charter expressly gave this right to the corporation. It will be noted that the application in the present case for an extension of the corporate existence of the corporation for the additional period of twenty years does not undertake in any way to enlarge, abridge, or otherwise modify the corporate powers as contained in the charter. It was a part of this charter that the corporation might be extended for a like period of twenty years. The general statute for the incorporation of companies by the superior court indicated a legislative policy that the corporate existence of private corporations should not be indefinitely extended. At the same time it was recognized and declared to be the policy that corporations chartered for twenty years might obtain extension of corporate existence for an additional period upon compliance with the statute. Stockholders who acquired stock in a corporation so chartered contracted with the view of the possibility of the extension of the charter by the will of the majority, and impliedly assented to it in advance. Such became a part of their contract; and when the corporation so authorized by a resolution adopted by stockholders who held a majority of the stock, the corporation was acting under the powers granted by the charter. In the case of Nugent v. Supervisors, 86 U. S. 241 (22 L. ed. 83), it was said, "It must be conceded, as a general rule, that a subscriber to the stock of a railroad company is released from obligation to pay his subscription by a fundamental alteration of the charter. . . . But while this is true as a general rule, it has no applicability to a case like the present. The consolidation of the Kankakee and Illinois River Railroad Company with another com-

pany was no departure from its original design. The general statute of the State, approved February 28th, 1854, authorized all railroad companies then organized, or thereafter to be organized, to consolidate their property and stock with each other, and with companies out of the State, whenever their lines connect with the lines of such companies out of the State. The act further declared that the consolidated company should have all the powers, franchises, and immunities which the consolidating companies respectively had before their consolidation. Nor is this all. The special charter of the Kankakee and Illinois River Railroad Company contained, in its eleventh section, an express grant to the company of authority to unite or consolidate its railroad with any other railroad 'or railroads then constructed or that might thereafter be constructed within the State, or any other State, which might cross or intersect the same, or be built along the line thereof, upon such terms as might be mutually agreed upon between said company and any other company. It was therefore contemplated by the legislature, as it must have been by all the subscribers to the stock of the company, that precisely what has occurred might the State, and to have contracted in view of it." Paraphrasing occur. Subscribers must be presumed to have known the law of the argument of the Supreme Court of the United States, we might say that it was contemplated by the legislature, as it must have been by all the subscribers to the stock of the company, that the corporation at the expiration of its charter might apply for and obtain a renewal of the corporate term, and that precisely that has occurred which might occur.

In 1897, a few months after the grant of the charter, the legislature passed an act specifying the manner in which such charters may be renewed. The course prescribed is that "a petition signed with the corporate name of the company whose charter is sought to be renewed, stating the name of the corporation, when incorporated, the date and manner of its original incorporation, and all amendments thereto, that it desires a renewal of its charter as set out in the original act of incorporation and the amendments thereto, together with any further amendments which may be desired in the renewal of said charter; and it shall file along with the petition a certified abstract of the minutes of the corporation, showing that the application for renewal and amendment has been authorized

by proper corporate action, and shall in all other respects comply with the requirements of this section, so far as the same applies to the grant of incorporation for the company or association whose charter is sought to be renewed." This section is incorporated in the Civil Code (1910), § 2823, par. 7. So far as this section concerns an application for the renewal of charters, it was simply declaratory of the existing law, which already provided for an extension of the term of a corporation chartered by the superior court. We are not concerned with the questions of amendments to the corporate powers,—whether such amendments which enlarge or fundamentally change the corporate powers shall be first authorized by the unanimous consent of the stockholders. It will be observed that the act does not authorize the adoption of any particular amendment; so that if the corporate powers should be vitally and fundamentally changed, the ordinary rules with respect to changes in such particulars would apply. *Alexander* v. *Atlanta & West Point R. Co.,* 108 *Ga.* 151 (33 S. E. 866). With respect to renewals for an additional term of twenty years, the original act expressly authorized the same; and the charter of this company, as granted by the superior court, contained an express provision to that effect. It is no fundamental amendment of the charter to project the corporate existence for another term, as authorized by the act under which the corporation was organized. To avail itself of the privilege of corporate extension, it was only necessary for the corporation, acting in the usual and customary manner for corporate action (by resolution adopted by the lawful holders of a majority of the stock), to apply to the court for a renewal of the corporate term. Accordingly, it was proper for the court to decline to enjoin the corporation, authorized by vote of holders of the majority of the stock, from applying for renewal of the corporate term, at the instance of minority stockholders who voted against such corporate action.

*Judgment affirmed. All the Justices concur, except Fish, C. J., and Atkinson, J., who dissent.*

ATKINSON, J. The first legislation in this State on the right of renewal of charters of corporations of the kind involved in this action was the act approved December 18, 1843 (Acts 1843, p. 108). By section one of the act it was declared: "that when the persons interested shall desire to have any . . trading com-

pany . . incorporated, they shall petition in writing the superior or inferior court of the county where such association may have been formed or may desire to transact business, for that purpose, setting forth the object of their association and the privilege they desire to exercise, together with the name and style by which they desire to be incorporated; and said court will pass a rule or order·directing said petition to be entered of record on the minutes of said court." By section two it was declared, that after the order is entered on the minutes of the court as provided above, the company shall have .specified corporate powers under the name designated in the petition. By section three it was declared, "that no company or association shall be incorporated under this act for a longer period than fourteen years, but the same may be renewed whenever necessary according to the provisions of the first section of this act." Properly construed, the words, "renewed . . according to the provisions of the first section of this act," did not confer upon the incorporators the power by their own corporate action to extend the term of corporate existence, but contemplated proceedings to be instituted by them, similar to those provided for in the first section of the act, before the court, and action by the court as originally taken in granting the charter. The act contemplated that all persons interested in the proposed corporation should apply for the charter in the first instance, and no less did it contemplate that all persons interested as stockholders in the corporation at the time of the proposed renewal of the term of existence should be parties to apply for the extension. This law was amended in certain particulars by the adoption by the legislature of the Code of 1863, and subsequently by other acts of the legislature; and later the law as amended was embodied in the Code of 1895, § 2350 which, so far as material to this case, declared: "The superior courts of this State shall have power to create corporations, except for banking, insurance, railroad, canal, navigation, express, and telegraph companies, by compliance with the following provisions: 1. The persons desiring the charter shall file, in the office of the clerk of the superior court of the county in which they desire to transact business, a petition or declaration, specifying the object of their association, and the particular business they propose to carry on, together with their corporate name, and the amount of capital to be employed by them actually paid in, and

their place of doing business, and the time, not exceeding twenty years, for which they desire to be incorporated; which petition or declaration shall be published once a week for four weeks in the nearest public gazette to the point where such business is located, before said court shall pass an order declaring said application granted. After the granting by the court of the order of incorporation, the petition and said order shall be recorded together by said clerk in a book to be kept for that purpose, to be known as 'The Record of Superior Court Charters,' and which shall be kept appropriately indexed by said clerk; but this shall not dispense with the recording of the order of incorporation upon the minutes of the court also, as a part of the proceedings of the court. . . 2. If, upon hearing such petition, the court shall be satisfied that the application is legitimately within the purview and intention of this Code, it shall pass an order declaring the said application granted, and the petitioners and their successors incorporated for and during a term not exceeding twenty years, with the privilege of renewal at the expiration of that time, according to the provisions above set forth. . . 6. The powers conferred in this section shall extend to the amendment of all charters contemplated in said section, whether the original charter sought to be amended was originally granted by the General Assembly of the State, or by a superior court of this State." The charter under consideration was granted by the superior court and organized by the incorporators under the statute as thus set forth. By looking to the origin of these provisions of the code, it more readily appears that "the privilege of renewal," expressed in paragraph 2 of section 2350 of the Code of 1895, was to the "petitioners and their successors" mentioned in paragraph 1, meaning thereby all the stockholders at the time the charter should be desired to be renewed. If the charter should not be renewed at the expiration of the term for which it was originally incorporated, the corporation would be dissolved by operation of law. Civil Code (1895), § 1882. If the charter could be renewed without unanimous consent of the stockholders, so that it would continue in business, the investment by all the stockholders would continue whether or not they desired it; and in case of continuance, the business might meet reverses that would be disastrous to the value of the stock. Therefore the term specified in the charter for the corporate existence would naturally

enter materially into consideration as an inducement to become a stockholder in the corporation. Beach on Private Corporations (vol. 1, § 22) is to the effect that generally it may be said that every valuable privilege conferred upon the incorporators of a private corporation, which conduces to the acceptance of the charter and organization thereunder, constitutes a contract which, under the doctrine of Dartmouth College v. Woodward, 4 Wheaton, 517 (4 L. ed. 629), can not be impaired. In the opinion in Bank of Ohio v. Knoop, 57 U. S. 369 (14 L. ed. 977), cited in support of the text, the "duration of the charter" was referred to as one of the material things that would be conducive to acceptance of its charter and operate to make it a contract affecting the stockholders." The principle was applied in the case of Nugent v. Supervisors, 86 U. S. 241 (22 L. ed. 83), but the charter involved in that case was construed in connection with statutes that differed materially from the statutes under which the charter under consideration was granted, and a different result was required. The corporators procured their charter in the first instance for the longest term that was authorized by the statute. Under the construction of the statutes above set forth, upon which the charter was granted, in accepting the charter the incorporators for themselves and their successors did so upon the condition, reserved by necessary implication, that the contract should expire at the expiration of twenty years from the date of the charter. Under these circumstances, the extension of the corporate existence would be a matter of contractual interest to all the stockholders. The proposed extension is not a matter, as contended by the majority, for exercise of mere corporate power, but one in which it is necessary for the corporation to go to the source of its creation for extended corporate existence, without which there would be no corporate power. In all substantial respects the extension of the charter is the same as a vital and fundamental amendment. When so considered, a ruling that it requires unanimous consent of the stockholders to grant an extension of the term falls within the principle that "When a proposed amendment to a charter is fundamental, radical, or vital, the unanimous consent of the stockholders to its acceptance is essential." *Atlanta Steel Co.* v. *Mynahan,* 138 *Ga.* 668 (75 S. E. 980), and cases cited. See also: 1 Beach on Private Corporations, § 22 et seq.; Avondale Land Co. v. Shook, 170 Ala. 379

(54 So. 268); *Snook* v. *Georgia Improvement Co.*, 83 *Ga.* 61, 65 (9 S. E. 1104).

FISH, C. J., concurs in this dissent.