STATE of Missouri, at the Information of John M. DALTON, Attorney General, State of Missouri, at the relation of Richard E. HOLEKAMP, Richard E. Holekamp, Marie H. Holekamp and Harrison L. Winter, Partners of R. E. Holekamp & Company, a partnership, Louis R. Holekamp, Louis R. Holekamp and Marianna Holekamp, his wife, Richard E. Holekamp, Jr., Edward Alfred Holekamp, Jennie H. Burst, Edith H. Drosten, John Henry Holekamp and Malcolm Lee Holekamp (Relators), Appellants,

v.

HOLEKAMP LUMBER COMPANY, a corporation, Carl H. Holekamp, Sr., Carl H. Holekamp, Jr., Robert L. Broderick, Rose Marie Broderick, Nancy L. Gordon, and Alice Ruth King (Respondents), Respondents.

No. 30388.

St. Louis Court of Appeals.

Missouri.

Jan. 19, 1960.

Motion for Rehearing or to Transfer to Supreme Court Denied Feb. 17, 1960.

Donald E. Fahey, St. Louis, for appellant.

Stockham, Roth, Buder & Martin, Leonard Martin, Eugene H. Buder, St. Louis, for respondent.

BRADY, Commissioner.

This is a quo warranto proceeding and comes to us upon transfer from the Supreme Court. The relators are the holders and registered owners of 315 shares (42%) of the issued and outstanding stock of Holekamp Lumber Company; and the respondents are the individual holders and registered owners of 435 shares (58%) of the issued and outstanding stock of said company, and the Holekamp Lumber Company, a corporation organized and existing under the laws of the state, having been incorporated on the 10th day of March, 1908. Pursuant to its original articles of agreement, the corporate existence of the respondent company would have expired on March 9, 1958. On December 3, 1957, respondents called a special meeting of the stockholders of the respondent company and voted, over objection of relators, to amend the articles of incorporation to extend the existence of the corporation for a period of fifty years from December 3, 1957. This special meeting was called pursuant to a resolution of the board of directors adopted at a special meeting of the board on November 20, 1957. Respondent directors Carl H. Holekamp, Sr. and Carl H. Holekamp, Jr. voted in favor of the resolution, and relator director Richard E. Holekamp voted against it. At the December 3, 1957 stockholders' meeting, the vote on extension of the corporate existence was 435 shares or 58% of the issued and outstanding stock for the extension, and 290 shares or 38.7% against it; 25 shares or 3.3% of the issued and outstanding stock did not vote, the holder thereof, Richard E. Holekamp, Jr., being absent from that meeting. The corporation respondent then filed its Certificate of Amendment to the articles of agreement with the Secretary of State, and a certified copy thereof was recorded in the Recorder of Deeds' office in the County of St. Louis on December 4, 1957. The procedures followed in this amendment of the articles of agreement were in accordance with the statutes of this state in effect on December 3, 1957, being Section 351.090 RSMo 1949, V.A.M.S.

On June 4, 1958, the information was filed. The individual respondents filed a timely motion to dismiss, contending that they were not proper parties to the action since it attacked the activities of the corporation and the corporation's existence was admitted. All of the respondents, corporate and individual, filed a timely motion to dismiss on the grounds that the information failed to state a claim upon which relief could be granted and also that the relators did not have the kind of special interest which entitled them to bring quo warranto. The trial court sustained both motions to dismiss, and relators' appeal is from that order.

■ We will first discuss the relators' assignment of error based upon the action of the trial court in sustaining the motion filed by all the respondents, corporate and individual, upon the ground that relators' information failed to state a claim upon which relief could be granted. For such purpose we are to consider the allegations of the information as true. State at inf. of Dalton ex rel. Tucker v. Mattingly, Mo. App., 275 S.W.2d 34.

Relators contend that the amendment of the corporate charter extending the life of respondent corporation for fifty years from December 3, 1957 is void because the original grant of the corporate charter constituted a contract between the state, the incorporators, and the corporation; that the terms of the contract are the articles of incorporation, the statutes at the date of the incorporation, and the Constitutions of this State and of the United States; that while the legislature of this state has inherent power to change its statutes, it can only do so subject to the provisions of the Constitutions of this State and of the United States; that there must also be read into the company's charter Article I, Section 13, Constitution of Missouri 1945, V.A.M.S., prohibiting any law impairing the obligation of contracts and/or ex post facto law, and Article I, Section 10 of the United States Constitution which is the corresponding section of that document. Relators' position is that as of the date of incorporation all stockholders became possessed of a vested right to have the corporate life cease on March 9, 1958. Relators contend that respondents cannot proceed, therefore, to amend the articles to extend the corporate life by a majority vote as provided by Section 351.085 RSMo 1949, V.A.M.S., because the legislature never intended the 1943 statutes to apply to any vested right or contract provision such as the extension of the corporate life, but was only meant to apply to regulatory, fee, or police power provisions, and that the automatic application of the 1943 Act as provided by Sec. 351.690, supra, is limited by its terms to these police or regulatory powers inherent in the state. Section 351.085, subd. 2, (2), supra, provides:

"2. In particular, and without limitation upon such general power of amendment, a corporation may amend its articles of incorporation from time to time so as * * * (2) To change its period of duration; * * *."

Section 351.690 is in four parts. Subparagraph 1 provides that the provisions of the 1943 Act relating to fees, police powers of the state and general regulatory provisions shall apply to all existing corporations. Subparagraphs 2 and 3 are concerned with certain corporations not here involved. Subparagraph 4 provides that the provisions of the 1943 Act, to the extent therein provided, shall apply to all other corporations existing under prior general laws of the state and not specifically mentioned in subparagraphs 1, 2 and 3. Section 351.090, supra, provides by subparagraph 3 that proposed amendments may be adopted by a majority vote (we are not here concerned with the situation covered by (a) of subparagraph 3.) Relators urge that the intention of the legislature and that body's awareness of the constitutional problems under Article I, Sec. 13, 1945 Constitution of Missouri and Article I, Sec. 10, Constitution of the United States that would arise by the application of Sec. 351.085 to all the provisions of articles of incorporation is illustrated by the legislative enactment of the provisions of Section 351.695 RSMo 1949, V.A.M.S. The provisions of that section are:

"All rights, privileges, immunities and franchises vested or accrued under the provisions of any law in force prior to the enactment of this chapter, and all pending suits and rights of action conferred shall not be impaired, diminished or affected hereby, or by the repeal of any such prior laws. Any liability or penalty incurred under prior laws prior to the repeal thereof shall not be impaired, diminished or affected hereby. All acts and laws not expressly repealed hereby shall continue in full force and effect. (L.1943, p. 410, § 174)."

Relators' contention is that either (1) their alleged right of termination is saved by Sec. 351.695, supra, or (2) Sections 351.085, subd. 2, (2), 351.090(3), and 351.690(4) of the 1943 Act are unconstitu-

tional. Of course the taking of such alternative positions resulted in the transfer of the case from the Supreme Court to us.

Relators also contend that since respondents cannot proceed under the provisions of the statutes above set out to amend by a majority vote for the reason that those statutes are not applicable to the respondent corporation automatically, and since it is admitted that there was never a vote of the respondent corporation's shareholders to accept the provisions of any subsequent statutes, respondents can only amend as they have attempted if such procedure was authorized under the corporation laws in force when the respondent corporation was formed. They urge that the stockholders, being those to whom the incorporators' rights descend, have only those powers granted in the contract, and can change or vary the contract only in the manner and to the extent authorized by the contract. Their argument is that the 1899 corporation laws must therefore be read into the articles of incorporation. Section 972, R.S.Mo.1899, V.A.M.S. § 351.025 note, reads:

"The powers enumerated in the preceding section shall vest in every corporation that shall hereafter be created or organized, and any corporation, including those heretofore organized and now in existence under any general or special law of this state, may accept the provisions of the general laws of this state relating to corporations, by filing with the secretary of state a certificate of such acceptance, signed by its president and secretary, duly authorized by its board of directors and approved by a vote of three-fourths of its stockholders, at any meeting duly and legally called for that purpose—notice of such meeting first having been given in manner and form as provided in sections 962 and 963 of this article, or by three-fourths of the stockholders, in writing; and upon

the filing of such certificate, the time of the existence of said corporation shall be extended for such period as was originally permissible to it, or as may be stated in its certificate of acceptance. But nothing herein contained shall extend or continue to any corporation organized or existing under a special law or charter any special privilege, immunity, franchises or exemptions not possessed by corporations organized under the general laws of this state; and any corporation organized or existing under special law or charter shall, by accepting or availing itself of the provisions of this section, be deemed and held to thereby waive and surrender any and all such special privileges, immunities, franchises and exemptions, and it shall be subject to all the duties and obligations of corporations under the general laws of this state: *Provided, further,* that the duration of such corporation shall not be continued as aforesaid, until such corporation shall pay into the state treasury fifty dollars for the first fifty thousand or less of the capital stock of the corporation, and a further sum of five dollars for every additional ten thousand dollars of its capital stock, as provided by law: *Provided,* that nothing in this section contained shall be construed to authorize the renewal, continuance or extension of the charter of any company engaged in the manufacture or sale of illuminating gas."

Section 958, R.S.Mo.1899, V.A.M.S. § 351.105, reads as follows:

"All amendments to articles of association of corporations organized under the laws of this state, made and filed in the office of the secretary of state, are and shall be and become a part of the articles of association of the corporation adopting and filing the same; and this section shall not be so construed as to give any corporation whose articles are amended as

in this article contemplated, any greater rights than though the subject of the amendments had been incorporated into the original articles of association; and any corporation, company or association which may increase its capital stock under the provisions of this article shall pay the additional amount provided by law for such increase."

Respondents contend that in State ex rel. Kinloch Telephone Co. v. Roach, 1916, 269 Mo. 437, 190 S.W. 862, Sections 958, supra, and 972, supra, were reconciled and construed. If there was no new law to accept, the corporation could dispense with the first step and extend its life under Section 958, supra, and pay the tax under Section 972, supra, and thus would only need a simple majority to extend its life in this fashion. The three-fourths vote was only required where some new law was accepted and not to the extension of the corporation. It follows, respondents urge, that the right to extend by a simple majority did exist when the respondent corporation was organized and the alleged right of relators never was a vested right.

On the other hand, respondents contend that even if we assume that prior to the 1943 Corporation Code it required three-fourths vote to extend the life of a corporation, nevertheless extension was possible and the only question is as to the mechanics of effecting such extension and the change, if any, in such mechanics. In this connection they urge that no reserve power was needed to permit an amendment of the corporation code permitting an extension of the corporate existence, and rely principally on Drew v. Beckwith, Quinn & Co., 57 Wyo. 140, 114 P.2d 98, 115 P.2d 651.

The parties agree as to this point—the case is a case of first impression in Missouri.

With the contention of respondent that no reserve power was needed for an amendment permitting an extension of corporate existence, we cannot agree. The real beginning of the law in respect to the question here raised is not the case of Trustees of Dartmouth College v. Woodward, 4 Wheat. 518, 4 L.Ed. 629, as usually thought, but is found in Fletcher v. Peck, 6 Cranch 87, 3 L.Ed. 162. The Dartmouth case extended the doctrine of Fletcher v. Peck, supra, and the cases that preceded it, and held that the constitutional provision against the impairment of contracts applied not only to contracts between individuals, and to grants of property made by the state to individuals or to corporations, to which it had previously been held to apply, but that it also applied to the rights and franchises conferred upon private corporations by legislative acts under which their existence was authorized, and that the rights to exercise the functions conferred upon them by the statute were, when accepted by the incorporators, contracts which the state could not impair, being within the meaning of the constitutional clause (Art. I, Sec. 10, United States Constitution) preventing the impairment of the obligation of contract by subsequent state legislation. Fletcher, Cyclopedia of Corporations, Vol. 7, Chap. 43, Sec. 3658. Despite criticism of the decision at that time and which continues even today, the rule of that case has become an accepted and universally recognized part of our judicial doctrine. It soon became obvious that the Dartmouth College decision extended undue protection to corporations. The excesses that became synonymous with the grant of corporate charters created a demand for modification of that decision. The first modification adopted by the courts was the principle of strict construction. Charles River Bridge v. Proprietors of Warren Bridge, 11 Pet. 420, 9 L.Ed. 773. The second attempt to limit the Dartmouth College case was that the states, seizing upon a suggestion made by Mr. Justice Story in his concurring opinion in the Dartmouth College case, inserted provisions in their constitutions and/or in their statutes, reserv-

ing the power to repeal or amend any charters granted. In Greenwood v. Freight Co., 105 U.S. 13, 26 L.Ed. 961 and in City of Covington v. Commonwealth of Kentucky, 173 U.S. 231, 19 S.Ct. 383, 43 L.Ed. 679, constitutional or statutory limitations on corporate charters were held valid upon a refinement of the Dartmouth doctrine itself; i. e., the limitations in the constitution or in the statutes became a part of the obligation of the contract in every charter.

While the Constitution of 1820 was silent upon the matter, the Constitution of Missouri, 1865, Article VIII, Sec. 4, V.A.M.S., prohibited the creation of private corporations by special acts and specifically reserved the power to repeal, amend, or alter. For some reason, the Constitution of Missouri, 1875, Article XII, Section 2, V.A.M.S., while continuing the provision against the creation of private corporations by special acts, dropped the reservation of powers found in the 1865 Constitution. There was no constitutional provision reserving power to the legislature in effect when the respondent corporation was organized.

Was there a statutory reservation? So far as the early statutes of this state are concerned, there was no set pattern or rule followed by the legislature in granting special charters. When charters were granted by special act of the legislature prior to that time, there sometimes was, and on other occasions was not, a specific reservation of power to the state government contained in the act granting the charter. Of course, the act was the charter itself. The first general corporation code of this state, the Act of March 19, 1845, contained a specific statement on reservation of power. That act provided in Chapter 34, Article I, Section 7, p. 232: "The charter of every corporation that shall hereafter be granted by the legislature, shall be subject to alteration, suspension, and repeal, in the discretion of the legislature." This section also appears in Revised Statutes of 1855, Chapter

34, Sec. 7, p. 371, but it does not appear in the Revised Statutes of 1865. Undoubtedly it was felt that since there was a specific reservation of power to alter, repeal or amend contained in the Constitution of 1865, this statutory reservation was duplication and was not necessary. This provision does not appear in the statutes after that date, and there was no statutory reservation of power to alter, amend or repeal until the passage of the 1943 Corporation Code. See Section 351.-700 RSMo 1949, V.A.M.S. It follows there was no statutory reservation of power in the legislature to alter, amend or repeal any corporate charter at the time of the organization of the respondent corporation.

The authorities cited by respondents do not bear out their contention that a reserved power was not needed in order for the legislature to make the provisions of the 1943 Corporation Code and any other act passed subsequent to the date of the incorporation of respondent corporation applicable to respondent corporation.

A careful reading of Smith v. Eastwood Wire Mfg. Co., 58 N.J.Eq. 331, 43 A. 567, discloses that the case was one where a specific statutory act authorized extension of the corporate life. The corporation was organized in 1880 and its existence fixed at twenty years. Under the Corporation Act of New Jersey then in force (Act of 1875, Sec. 11) the maximum period of corporate existence was fifty years, and by Act of 1876 it was provided that the corporation could extend for any period not exceeding fifty years. This is a case where the extension was specifically provided for by a statute in existence at the time of incorporation. See General Investment Co. v. American Hide & Leather Co., 97 N.J.Eq. 214, loc. cit. 223, 127 A. 529, loc. cit. 533, where the decision is so interpreted. As one could naturally suppose from the language of the court at the bottom of the second column on page 568 of 43 A. where it is said " * * * or under subsequent laws, by which the

state, as it has the right to do, in its control over corporations * * *", there was a specific statutory reservation of power in the Act of 1875, Article I, subd. 6, p. 178, R.S. of N.J., 1709–1877, in force at the time of the corporation's organization.

Respondents cite Hueftle v. Farmers Elevator, 145 Neb. 424, 16 N.W.2d 855, decided by the Supreme Court of Nebraska. This is another case where the question was one not involved here. At page 858 of the Northwestern report of that case, the court specifically recognized that " * * * the right to amend the articles and bylaws was reserved at the time plaintiffs became stockholders * * *" and goes on to hold that amendments even under a reserved power cannot impair vested or contractual rights of minority stockholders. The case was decided upon the question of the extent of the reserved power, and is not authority in the case at bar.

As appellant points out, Drew v. Beckwith, supra, was a case of reserved power. At loc. cit. 103 of 114 P.2d supra, the court points out and relies upon Article 10, Section 1, of the 1890 Constitution of Wyoming which contains a specific reservation of power to alter, amend, or repeal. Moreover, earlier on that same page the court cites Sec. 518, R.S.Wyo.1887, which was a statutory reservation of power. Both the constitutional and the statutory reservation of power were in effect when the corporation therein concerned was organized. Actually, the Drew case is one on the question of the limitation of the reserved power. As the court said loc. cit. 104 of 114 P.2d:

"However, it is generally agreed that the reserved power is not unlimited in its scope. Phillips Petroleum Corp. v. Jenkins, 297 U.S. 629, 56 S.Ct. 611, 80 L.Ed. 943; 13 Am.Jur. 237; Fletcher, supra, Sec. 3684. Hence the only valid argument herein is upon the question as to whether the extent to which the contract was

changed, or rather was authorized to be changed, was justified. If there had been in existence at the time of the organization of the corporation a law which specifically authorized the extension of corporate life, then that law would have been a part of the contract, and such extension would have been lawful. McKemie v. Eady-Baker Grocery Co., 146 Ga. 753, 92 S.E. 282; Smith v. Eastwood Wire Mfg. Co., 58 N.J.Eq. 331, 43 A. 567; Keetch v. Cordner, 90 Utah 423, 62 P.2d 273, 108 A.L.R. 52; Loeffler v. Federal Supply Co., 187 Okl. 373, 102 P.2d 862. *But there was no such statute and the question is whether the reserved power under the constitution and statute already mentioned is sufficiently broad and comprehensive for that purpose."* (Emphasis supplied.)

Insofar as the case of Keetch v. Cordner, supra, is concerned, suffice it to say that while the court does not so indicate in its opinion, a search of the earlier laws of Utah will disclose that Section 549 of the Laws of 1876 was in effect when the corporations therein concerned were organized. That section reserved power to modify or repeal to the governor and legislature of the Territory of Utah. That section was in the general corporation laws. So it is with the other cases cited by respondent and those cited by the court in the Beckwith case; they are all cases where the state had a reserved power and where the court relied, to some extent at least, upon the existence of that power in making its decision.

■ Neither do we understand Pearcy, Missouri Corporation Law, Sec. 175, p. 654, cited by respondent, to be authority for the contention of respondent that this state has a reserved power in its constitution by implication inferred from the passage of acts requiring incorporation only by general laws. All that author does is to pose the question and then say, "The Missouri Su-

preme Court has not yet said so." If this is authority, it is so nebulous we cannot grant it weight, especially since that writer goes on to point out that the Supreme Court, in Hicks v. Forsyth Electric & Water Co., 330 Mo. 839, 50 S.W.2d 1045, had an excellent opportunity to say so and did not. At loc. cit. 1047 of the Southwestern Reporter, the court said:

"If the act changes or alters in any respect the rights arising from the implied contract between a corporation and its stockholders, or between the stockholders inter sese, as they have heretofore existed, it must, *under well-known rules of construction,* be held to be prospective only in its operation. Cranor v. School Dist., 151 Mo. 119, 52 S.W. 232; Supreme Council of Royal Arcanum v. Heitzman, 140 Mo. App. 105, 111, 120 S.W. 628. *If, therefore, it was intended to effect a change in the contract rights just mentioned, it is without application to those existing at the time it became effective as a law.*" (Emphasis supplied.)

It was held prospective because to hold it retrospective would have rendered it unconstitutional and void, and under well-known rules of construction, when an act is susceptible of two interpretations, one of which will render it unconstitutional, every possible weight shall be accorded the constitutional construction. See the Cranor and Heitzman cases cited in the excerpt set out above and earlier cases cited therein. Also see State ex rel. City of St. Louis v. Missouri Pacific Railway Co., 262 Mo. 720, 174 S.W. 73. The case of Hicks v. Forsyth Electric & Water Co., supra, is a clear indication that, so far as the theory of subsequent amendments applying to earlier corporations, the result would be the opposite of the position for which respondent cites Pearcy, supra.

Respondent contends that what has been said herein regarding reserved power and the doctrine of the Dartmouth College case is not applicable when the corporation was chartered under the general laws. We cannot agree. When this state had a reserved power, it was specifically held to apply to " * * * all subsequent charters, whether granted by general law or special acts of the legislature." Gregg v. Granby Mining & Smelting Co., 164 Mo. 616, loc. cit. 628, 65 S.W. 312, 314; see Fletcher, Cyclopedia of Corporations, supra, Sec. 3658, p. 795.

The doctrine of the Dartmouth College case remains inviolate. Absent a reserved power, it cannot be said that the incorporators impliedly agreed at the time they entered into the articles of incorporation to any change or amendment which the legislature might later make in the general corporation code (Pacific Railway v. Renshaw, 18 Mo. 210, loc. cit. 216), and the legislature could not interfere or change by subsequent legislative acts the contract created upon the incorporation of respondent company.

In addition to the case of Hicks v. Forsyth Electric & Water Co., supra, the case of State ex rel. and to Use of George B. Peck Co. v. Brown, 340 Mo. 1189, 105 S. W.2d 909, Supreme Court en banc, 1937, is important. In that case relator was organized in 1889 for fifty years. Relator sought to amend to extend existence and sent amendment to respondent Secretary of State but refused to pay the fees called for by Sec. 4556, R.S.Mo.1929 (Mo.Stat. Ann. 4556, p. 2002) which was identical to Sec. 972 here involved. Relator contended that under an act of 1931 the legislature provided a method for extending its corporate existence and since that section, Mo.Stat.Ann. 4556a, p. 2003, said nothing of the payment of such fees, the relator could proceed to amend thereunder and not pay the fees required by Sec. 4556, supra (972). It was held that these two sections were not repugnant nor was the later act an amendment of the earlier statute. It was a new act and should be read with the other act. The court held loc. cit. 912 of the report in 105 S.W.2d that a corporation organized for a period of years

may amend its charter so as to give it perpetual existence upon the payment of the fee provided for in Section 4556 (972). Without careful consideration, the case would seem strong authority for respondent at bar. However, it must be noted that the 1931 act provided for the same thing as the earlier section, three-fourths vote, and that was obviously obtained. In other words, the section with which we are here concerned, 972, was in force as Sec. 2509, R.S.Mo.1889, when the Peck Company was organized. That section allows acceptance by three-fourths vote of subsequent laws, such as the 1931 act, and the three-fourths vote was given.

Both relators and respondents have cited Midland Truck Lines v. Atwood, 362 Mo. 397, 241 S.W.2d 903. That case is actually strong authority for our decision herein. Section 972, supra, had become Section 5031, R.S.Mo.1939, and was in effect when Midland Truck Lines was organized in 1935. The court held that since that section was in force when the corporation was organized, it became a part of its charter and the corporation could proceed to accept the subsequent general laws under it. It did so, and adopted the general laws by three-fourths vote, and then amended its charter to issue the preferred stock authorized by legislative enactment made subsequent to incorporation. In the case at bar, the same reasoning would apply, except that respondent corporation did not proceed to accept the provisions of subsequent general laws. That part of the decision holding that the laws in effect when the vote under Sec. 5031, supra (972) to accept subsequent general laws was taken are those that thereafter apply, and not the laws in effect when the corporation was organized, is not on the point here involved.

State ex rel. Kinloch Telephone Co. v. Roach, supra, cited by respondents, is a case that, without very careful reading, is compelling toward respondents' position. That case, on original writ for mandamus by the state at the relation of the Kinloch Telephone Company against the then Secretary of State, was decided by our Supreme Court en banc in November, 1916. The Kinloch Telephone Company had been organized in December, 1896, and its articles failed to state any term for its corporate existence. Therefore, the term of existence was conceded to be twenty years, the statute being the same as Sec. 971, supra, Section 351.385 RSMo 1949, V.A.M.S. On June 22, 1916, the "board of directors and stockholders" adopted an amendment extending the existence for thirty years. The required preliminary steps were taken, but when the proposed amendment was presented to the Secretary of State he refused to file and to certify it. The company was relying upon Sec. 2977, R.S.Mo.1909, which is the same as Sec. 958, supra. Section 972, supra, had then become Sec. 2991, and Sec. 971, supra, had become Sec. 2990. The Secretary of State made two contentions. First, he denied that Sec. 2977 (958) covered amendments extending corporate existence, claiming that Sec. 2991 (972) was the only section providing for an extension of existence; and second, in any event, the Kinloch Telephone Company had to pay the tax prescribed in Sec. 2991 (972). The court pointed out that if, as Kinloch contended, Sec. 2991 (972) did not apply and if, as the Secretary of State contended, Sec. 2977 (958) was not applicable to such an amendment, then there was no statutory power given to corporations in Missouri to prolong their life. The court then said, loc. cit. 862 of the Southwestern report:

"This power, however, *seems not to be seriously questioned,* and for a long number of years has been generally recognized and exercised, and *for the purpose of this case we shall treat it as existent.*" (Emphases supplied.)

The court held that Sec. 2991 (972, supra) was applicable to corporations organized subsequent to its passage and under the general laws. We cannot agree with respondent's interpretation of the Kinloch case that the case authorizes extension of corporate life under Sec. 958. All that

case did was to hold that the last part of Sec. 972, providing for the payment of fees, applies whenever a corporation extends its corporate life. The case is one where the vote was to adopt subsequent laws, as provided by Sec. 972, and is clearly distinguishable also on the ground that all shareholders agreed to so act. It is not controlling in the case at bar, the point in this case being assumed by the court in the Kinloch case for the purposes of that decision which was based on other grounds and was not seriously presented by the parties in the case.

In State ex rel. Equality Savings & Building Ass'n v. Brown, 334 Mo. 781, 68 S.W.2d 55, 56, the court had before it an association organized in 1884 that, according to the petition, extended its corporate existence in 1895 " * * * in the manner provided by law * * *" for a period of fifty years from and after 1884. Sometime shortly before expiration of that period, it unanimously voted to extend again. Relator contended that it only had to pay the $5 fee for such extension provided by the special act relating to building and loan associations and respondent contended that it had to pay the fees required by Section 972 which was then Sec. 4556, R.S.Mo.1929. The court held that the provisions of the special act relating only to building and loan associations applied, pointing out that that act had been in effect since 1889. The respondent urged the Kinloch case, supra, as controlling, and compelling payment under Sec. 4556 (Sec. 972). The court said at loc. cit. 59 of the Southwestern report:

"Respondent urges our decision in State ex rel. Kinloch Telephone Co. v. Roach, 269 Mo. 437, 190 S.W. 862, as supporting his contention that section 4556 is controlling. The Kinloch case is not analogous to the instant case on the point in controversy because there was no statute dealing specially with extension of duration of telephone companies. The general statute, now sec-

tion 4556, was the only one that definitely provided for such extension. In the instant case we have two statutes definitely dealing with the subject, one providing such extension for corporations in general, and one providing such extension for building and loan associations in particular."

While dictum, it is certainly clear that the court regarded the Kinloch case in the same light as we have herein distinguished it as not ruling upon whether or not Section 958 allows amendments to extend corporate existence, and further, that the court regarded Sec. 972 as the only section allowing amendments to extend corporate existence.

The provisions of Sections 351.085 and 351.090 do not apply to respondent corporation, being prospective in their application. We also hold that Section 351.690 does not apply to respondent corporation. To hold otherwise would be to render unconstitutional Sections 351.090, 351.690 and 351.085. When faced with such alternatives, our duty is clear. State ex inf. McKittrick v. American Colony Ins. Co., 336 Mo. 406, 80 S.W.2d 876, loc. cit. 883; Ellis v. State Department of Public Health and Welfare, Mo.App., 277 S.W.2d 331.

Having above held that subsequent legislative acts cannot be automatically applied to respondent corporation, and since it is admitted that respondent corporation never accepted the subsequent legislative acts allowing the extension of corporate life nor ever submitted such a question to its shareholders, the motion to dismiss for failure to state a cause of action should have been overruled unless the statutes in force when respondent corporation was organized authorized or allowed such an amendment as is attempted here. Here, also, respondents must be denied, for these statutes do not permit amendments to extend the corporate life. It is not the lack of a certain percentage of shareholders agreeing to such amendment that prevents it, but the missing

element is the total lack of any power in the corporation to extend under any vote.

■ Well-known rules of statutory construction compel such a decision. This was a business corporation and was organized under that section of the Revised Statutes of 1899. Section 1312 of the Manufacturing and Business Corporation Law limited corporate existence to fifty years for such corporations as respondent. (Prior to 1879, business corporations were limited to twenty years existence. Section 926, R.S. Mo.1879, increased this period to fifty years, and it remained at fifty years until 1927, when perpetual existence was provided for as to new corporations. See State ex rel. H. D. Lee Co. v. Bell, 355 Mo. 94, 195 S.W. 2d 492; State ex rel. and to Use of George B. Peck Co. v. Brown, supra.) The provisions of the statutes of 1899 dealing with business corporations say nothing of amendments, and to determine what, if any, amendments are to be allowed, we must refer to Article I of Chapter 12 of the Revised Statutes, 1899, dealing with the general powers of private corporations. Section 958, supra, recognizes that there may be amendments, but it does not state what vote is required therefor, nor for what purposes such amendments could be made. It does restrict such amendments to no greater rights than though the subject of the amendments had been incorporated into the original articles of association. In the case at bar, the amendment was to extend the existence of the corporation for another fifty years, and as noted herein, this term was allowable under the statutes in force when the corporation was organized, and so the amendment does not violate that provision of Section 958. Section 972, supra, states clearly, "The powers enumerated in the preceding section shall vest in every corporation that shall hereafter be created or organized * * *." The preceding section, Section 971, Revised Statutes of 1899, defines corporate powers and lists seven subsections. The power to extend corporate life is not listed therein, nor is

it listed at any place in the statutes in effect when respondent corporation was organized, nor is it such as to be incidentally necessary to the exercise of any of the powers expressly granted. Following the general rule, where the statute specified the powers of a corporation, such specification by implication excludes all other powers or rights except those as may be incidentally necessary to an exercise of the powers expressly granted. Prairie Slough Fishing & Hunting Club v. Kessler, 252 Mo. 424, 159 S.W. 1080; Doe Run Lead Co. v. Maynard, 283 Mo. 646, 223 S.W. 600. Under well-familiar rules of construction, an act such as this must be read as a whole, and it follows that Section 958 can only have reference to the amendments that might be allowed under the corporate powers created by Section 971, or as a reasonable incident thereto. Doe Run Lead Co. v. Maynard, supra.

The very case most heavily relied upon by respondents clearly supports the decision herein. In the quotation from that case earlier in this opinion, the court in the case of Drew v. Beckwith, Quinn & Co., supra, stated that if there had been a statute in existence when the corporation was organized, specifically authorizing the extension of corporate life, that law would have been part of the contract and such extension would be lawful: a strong indication that the absence of such specific authorization makes the extension of corporate life unlawful. Of course, the court therein allowed such extension, but as earlier pointed out herein the question was one of whether or not the reserved power was sufficient to empower legislation subsequent to the incorporation for that purpose and to make such legislation effective as to the company. Without that reservation, the Drew case clearly indicates the path we are here treading. To that same effect is McKemie v. Eady-Baker Grocery Co., 146 Ga. 753, 92 S.E. 282; and Loeffler v. Federal Supply Co., 187 Okl. 373, 102 P.2d 862. In both of those cases there was present the element missing in the case at bar;

i. e., statutory power to renew or extend. In the McKemie case, corporations by statute were expressly given the right to renew the charter at the end of twenty years. The court there said, loc. cit. 283 of the opinion in 92 S.E.:

> "Paraphrasing the argument of the Supreme Court of the United States, we might say that it was contemplated by the Legislature, as it must have been by all the subscribers to the stock of the company, that the corporation at the expiration of its charter might apply for and obtain a renewal of the corporate term, and that precisely that has occurred which might occur."

The case is further distinguishable on the ground that the majority opinion specifically states that the court is there dealing with a question of renewal of a charter and draws a careful distinction later on page 283 between that case and the case of an amendment to the charter. The dissent was on the basis that this was not a renewal, but an amendment. It is also clear that Article III, Section 7, paragraph 18 of the then constitution of that state constituted a reservation of power in the legislature. The same is true of the Loeffler case. There, also, the statutory provision for renewal was in full force and effect when the corporation there involved was originally incorporated. At loc. cit. 865 of the report in 102 P.2d, the court held that the incorporators were presumed to have entered into the corporation contract with full knowledge of the statute. The case is also distinguishable on the grounds of a renewal as compared to an extension. At loc. cit. 864, the court cites Fletcher's Cyclopedia of Corporations, Vol. 8, page 553, stating the distinction between a renewal and an extension. At loc. cit. 865, the court further points out the specific statutory reservation of power to the legislature which was in effect when the corporation was first formed, and relies thereon.

Stockard, Missouri Corporation Law, Chapter 25, Sec. 430, p. 214, states that the only statutory provision that can be construed to give a corporation a right to renew or extend its corporate existence beyond that first named in its charter is Sec. 972. (At the time that authority was written, the section was Sec. 9750, R.S.Mo.1919. The provision was first enacted in 1885.) Sears on Missouri Corporations, p. 61, agrees and cites the case of Bradley v. Reppell, 133 Mo. 545, 32 S.W. 645. In that case, although it is concededly dictum since the corporation there involved was created by a special act of the legislature, and the case is otherwise distinguishable on the facts, the court, at page 552 of the Mo. report, 32 S.W. 646, in reply to a contention that only the state was the proper authority to bring the action, states:

> "On the contrary, in this state, as elsewhere, *unless otherwise provided by statute,* the law is that, where the term of the existence of a corporation is fixed by its charter *or the general law,* upon the expiration of that term the corporation becomes ipso facto dissolved. It can no longer act in a corporate capacity, and its title to property ceases." (Citing authorities.) (Emphases supplied.)

In the wording of Sec. 972, supra, the insertion of the clause " * * *; and upon the filing of such certificate, the time of the existence of said corporation shall be extended for such period as was originally permissible to it, or as may be stated in its certificate of acceptance * * * " refutes the contention that any other section of the then existing statutes such as Sec. 958, supra, were ever intended to be applicable to amendments extending corporate existence. The plain meaning of that language and the position in which it is placed in Section 972, supra, the punctuation preceding it and the fact that a new sentence containing a totally different thought begins after that clause, all compel it to be read in connection with the preceding matter requiring three-fourths vote of the shareholders. When this is consid-

ered in light of the failure of Sec. 971, supra, to give power to extend and the general nature of Sec. 958 which must relate only to the powers granted under Sec. 971, supra, the conclusion that the legislature intended Sec. 972, supra, to be the only method of extension and to require three-fourths vote of the shareholders to act thereunder to extend is inescapable.

The decision that the Revised Statutes of 1899 did not permit extension of a corporation's life is not only required by rules of statutory construction, and supported by case law and test authorities, but it is also based upon sound reason, for it carries out the very agreement of the incorporators. It is not difficult to assume many situations in which the length of the life of the corporation could be a matter of paramount importance to one considering an investment in that corporation. In any event, we do not think that we should now indulge in speculation as to whether or not the limit of corporate existence was of importance to the original incorporators. But the legislature did not leave corporations without any remedy. In 1883, the legislature first enacted what became Sec. 1008, R.S.Mo. 1899, V.A.M.S. § 351.115, in force when respondent corporation was organized. By the provisions of that section, when a charter of any corporation is about to expire by limitation of time, the stockholders or a majority in interest thereof may incorporate under the general laws of the state for the purpose of continuing the business of such expiring corporation. It is difficult to see why this section approved of a majority vote or would have been enacted by the legislature, except that the legislature considered it the only way to extend corporate life beyond the time limited in the articles of incorporation.

■ We hold that under the statutes in force when respondent corporation was organized, an amendment to extend corporate life was not permissible for the reason that Section 958, supra, must be read in connection with Section 971, supra, and the only amendments authorized under Section 958 are those with reference to the powers enumerated in Section 971. The power to extend the corporate life not being one of the powers enumerated in Section 971, supra, an amendment for that purpose is not authorized by Sec. 958, supra. We further hold that Sec. 972, supra, does not authorize an amendment to extend corporate life by a majority vote.

■ Respondents contend that relators have no right to bring quo warranto in this case as there is no allegation of public interest involved, but we find the question herein presented to be one in which the public as a whole is interested. State ex inf. McKittrick v. American Colony Insurance Co., supra. The case is clearly within the rule of State ex inf. Hadley v. Standard Oil Co., 218 Mo. 1, 349, 116 S.W. 902, that the question would be whether the misuse or abuse consists in the exercise of a franchise power not conferred upon the corporation by its charter, or in violations of prohibitions of the corporate charter or of the general laws to which it is subject. This information was signed by the Attorney General of this state, but the relators have control of the action. State on inf. of McKittrick ex rel. Handlan v. Wilkie Land Co., 349 Mo. 666, 162 S.W.2d 846.

It follows from what we have said that the respondent majority stockholders of Holekamp Lumber Company are without right and authority to amend that corporation's articles of incorporation by simple majority vote so as to extend the corporate life beyond that limited in the original articles, and therefore, the respondent corporation is improperly and unlawfully exercising a corporate franchise of this state.

■ The trial court sustained the individual respondents' motion to dismiss as to them on the grounds that they were not proper parties, and relators assign that action as error.

In State on Information of McKittrick, ex rel. City of California v. Missouri Utili-

ties Co., 339 Mo. 385, 96 S.W.2d 607, 106 A.L.R. 1169, the Supreme Court pointed out that the decision as to the proper parties depends upon what the writ is sought to correct, or upon what the information alleges as improper. At page 613 of 96 S.W.2d supra, it said:

"Where a writ of quo warranto, or an information in the nature thereof, is filed to test the existence of a corporation which, it is claimed, has never really been created by the state at all, the proper defendants are the natural persons asserting the right to act as a corporation. But where it is asserted that a corporation, recognized to legally exist, has overstepped its powers, it, and it alone, is the proper defendant in quo warranto."

The question here, then, is whether the information tests the existence of Holekamp Lumber Company, or whether it raises the question as to whether that corporation, recognized to legally exist, has overstepped its powers. It might be said that since the corporation under its previous charter was to come to an end on March 9, 1958, the writ in this case is to test the existence of the present corporation as extended by the vote of 58% of the issued and outstanding stock at the December 3, 1957 stockholders' meeting. However since the information itself states that the respondent corporation is a corporation recognized and existing under the laws of this state, it may also be contended that relators are merely testing the usurping of the corporation's powers, and not its legal existence. In the concluding paragraph thereof, the information prayed for the trial court to find and decree that respondents, and it lists all of them, corporate and individual, had no right or title to the franchise, rights and privileges of a corporation and that they be ousted and deprived from operating as and carrying on the functions of a corporation. While the language of the prayer when read with the admission of the corporate existence may be confusing, we believe the clear intent of this information is to test the existence of the corporation. The individual respondents are proper parties for that purpose. Where the corporation is actually existing, and the amendment to the articles of agreement has been filed with the Secretary of State and the Recorder of Deeds of St. Louis County, both the corporation and the stockholders are proper parties. The motion to dismiss as to the individual respondents should have been overruled.

The commissioner recommends that the judgment be reversed and the cause remanded for further proceedings not inconsistent with the decision herein expressed.

PER CURIAM.

The foregoing opinion of BRADY, C., is adopted as the opinion of the court. The judgment is, therefore, reversed and the cause remanded for further proceedings not inconsistent with the decision herein expressed. It is so ordered.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.